Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 4, 2018

## 2018 CO 50

**No. 17SA299, State Farm v. Griggs — Attorney-Client Privilege — Implied Waiver.**

In this original proceeding pursuant to C.A.R. 21, the supreme court reviews the district court's determination that petitioner State Farm Fire and Casualty Company impliedly waived the attorney-client privilege protecting communications between it and its former counsel when it submitted an affidavit from that former counsel to rebut factual allegations of discovery misconduct.

The court issued a rule to show to cause why the district court's finding of implied waiver should not be reversed and now makes that rule absolute. The attorney affidavit submitted in this case did not put privileged information at issue by asserting a claim or defense that depends on privileged information or attorney advice. Rather, the affidavit contained only factual statements that were intended to rebut allegations of discovery misconduct. Accordingly, the court concludes that the district court erred in finding that State Farm impliedly waived its attorney-client privilege on the facts presented.

**The Supreme Court of the State of Colorado**

2 East 14th Avenue • Denver, Colorado 80203

**2018 CO 50**

**Supreme Court Case No. 17SA299**
*Original Proceeding Pursuant to C.A.R. 21*
Broomfield County District Court Case No. 16CV30175
Honorable F. Michael Goodbee, Judge

**In Re**
**Plaintiff:**

State Farm Fire and Casualty Company,

v.

**Defendants:**

Gary J. Griggs and Susan A. Goddard.

**Rule Made Absolute**
*en banc*
June 4, 2018

**Attorneys for Plaintiff:**
Wheeler Trigg O'Donnell LLP
John R. Trigg
Evan Stephenson
Marissa S. Ronk
  *Denver, Colorado*

**Attorneys for Defendant Susan A. Goddard:**
Connelly Law, LLC
Sean Connelly
  *Denver, Colorado*

Franklin D. Azar & Associates, P.C.

Natalie Brown
Dezarae D. LaCrue
 *Aurora, Colorado*

No appearance on behalf of Defendant Gary J. Griggs.

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1     In this original proceeding pursuant to C.A.R. 21, we review the district court's determination that petitioner State Farm Fire and Casualty Company ("State Farm") impliedly waived the attorney-client privilege protecting communications between it and its former counsel when it submitted an affidavit from that former counsel to rebut allegations of discovery misconduct. We issued a rule to show cause and now make the rule absolute. We conclude that the attorney affidavit submitted in this case did not place any privileged communications at issue. Accordingly, the district court erred in finding that State Farm impliedly waived its attorney-client privilege.

## I.  Facts and Procedural History

¶2     This case concerns a discovery dispute arising out of an automobile accident in which Gary Griggs, a driver insured by State Farm, injured Susan Goddard and several others.

¶3     In the underlying action, State Farm seeks a declaratory judgment that Griggs breached the contractual duties set forth in his insurance policy by executing a settlement agreement pursuant to Nunn v. Mid-Century Insurance Co., 244 P.3d 116 (Colo. 2010), in which he waived a jury trial, consented to arbitration, and assigned to Goddard any rights that he had against State Farm. Goddard counterclaims, asserting, among other things, that State Farm acted in bad faith by refusing both to settle her claims against Griggs and to indemnify Griggs for the judgment entered against him after the arbitration to which Griggs had consented.

¶4     In the course of discovery on the above-described claims, a State Farm insurance adjuster testified regarding a medical lien related to services apparently provided by

Exempla to another person injured in the automobile accident at issue. The adjuster testified that this lien was in the amount of $264,075. This was pertinent because State Farm purportedly relied on the amount of this lien to determine the portions of the limited insurance proceeds to allocate to each of the injured parties' claims.

¶5      At some point, State Farm's then-attorney, Franklin Patterson, learned that the above-described lien was not, in fact, in the amount of $264,075. Rather, the correct lien amount was only $264.75. Before Patterson had taken any steps to correct the adjuster's misstatement, however, the district court entered an order disqualifying him and his law firm, pursuant to Colo. RPC 1.9, as State Farm's counsel, based on Patterson's prior attorney-client relationship with the law firm representing Goddard.

¶6      Following Patterson's disqualification, State Farm's newly-retained counsel disclosed the corrected lien amount to Goddard, noting that the lienholder, Exempla, apparently was the source of the error. Based on this disclosure, which Goddard viewed as belated by many months, Goddard sought sanctions against State Farm in the form of a directed verdict on her bad faith claim. In support of this request, Goddard alleged that State Farm had deliberately and intentionally concealed the corrected lien information.

¶7      State Farm filed a brief opposing Goddard's request for sanctions and in support thereof submitted an affidavit from Patterson. In this affidavit, Patterson recited the following facts pertinent to his involvement in the discovery process and the lien correction:

4

11. I discovered in mid-June 2017 the [medical] lien had been recorded in the State Farm claim materials as $264,075 but was, in fact, $264.75. I was unaware of, and still investigating, the origin of the error. At that time, I was still unaware of any correction of the lien amount by Exempla.

12. On July 13, 2017, Goddard filed a motion to disqualify my firm and me as counsel for State Farm.

13. The Court entered an order of disqualification in this action before I had fully investigated and determined a course of action regarding the lien.

14. Until last week, I was unaware that Exempla had ever corrected the [medical] lien.

15. At no time did I knowingly or intentionally make any misstatement of fact regarding the [medical] lien. Nor did I fail to correct a knowing or intentional misstatement of fact regarding the [medical] lien.

¶8 After State Farm submitted Patterson's affidavit, Goddard argued that State Farm had waived its attorney-client privilege. Notably, Goddard's argument was not premised on Patterson's affidavit. Rather, Goddard argued that State Farm had waived the privilege by endorsing Patterson as a witness to testify regarding State Farm's apparent theory that the arbitrator had colluded with Goddard's counsel and, therefore, State Farm had properly refused to intervene in the arbitration (Patterson's affidavit did not address this issue). In Goddard's view, such an endorsement necessarily implicated legal advice that Patterson had given to State Farm.

¶9 The district court ultimately agreed that State Farm had waived the attorney-client privilege, but the court did not rely on the ground advanced by Goddard. Instead, the court found that "the affidavit filed in this matter impliedly waives the attorney-client privilege of Patterson" because that affidavit "inserts or injects claims or defenses that . . . focuses [sic] on attorney advice." (The district court

5

did not specify the particular claim or defense that it considered the affidavit to have injected.) Based on this ruling, the court required State Farm to disclose communications between its employees and Patterson.

¶10 State Farm then petitioned this court for a rule to show cause why the district court's order finding an implied waiver of the attorney-client privilege and requiring State Farm to disclose communications between its employees and Patterson should not be reversed. We issued the rule to show cause, and this matter has now been fully briefed.

## II. Analysis

¶11 We begin by discussing our jurisdiction to hear this matter. We then proceed to discuss the law of implied waiver of the attorney-client privilege, and we apply that law to the facts now before us.

## A. C.A.R. 21

¶12 The exercise of our original jurisdiction under C.A.R. 21 rests within our sole discretion. Fognani v. Young, 115 P.3d 1268, 1271 (Colo. 2005). An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in purpose and availability. Wesp v. Everson, 33 P.3d 191, 194 (Colo. 2001). It is a proper remedy when, among other things, a district court has erred and an appellate remedy would be inadequate. See id.

¶13 Here, the district court determined that State Farm had impliedly waived the attorney-client privilege protecting communications with its former counsel. The erroneous production of such communications would damage State Farm and could not

6

be cured on appeal because the damage would occur upon disclosure to Goddard, regardless of the ultimate outcome of any appeal from a final judgment.  Gateway Logistics, Inc. v. Smay, 2013 CO 25, ¶ 12, 302 P.3d 235, 239.

¶14    Accordingly, we deem it appropriate to exercise our original jurisdiction in this case.

## B. Implied Waiver

¶15    Turning then to the merits, we note, as a preliminary matter, that Goddard's motion for sanctions, as well as the arguments before the district court and this court, have focused on statements that State Farm made in its C.R.C.P. 26(a)(1) endorsement of Patterson as a witness, rather than on any statements made in Patterson's affidavit. Because the district court expressly confined its ruling on implied waiver to the affidavit, however, we limit our consideration to the question of whether State Farm's submission of the Patterson affidavit impliedly waived State Farm's attorney-client privilege, as the district court found.

¶16    The attorney-client privilege shields from disclosure communications between an attorney and a client relating to legal advice.  See Wesp, 33 P.3d at 196.  A client, as holder of the privilege, may waive this privilege either expressly or impliedly.  See People v. Trujillo, 144 P.3d 539, 543 (Colo. 2006).  We have observed that a client impliedly waives the privilege when he or she (1) discloses privileged communications to a third party or (2) asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue.  Id.; People v. Madera, 112 P.3d 688, 691 (Colo. 2005).

7

¶17     Although our cases have not expressly delineated what it means for privileged communications to be placed "at issue" by way of a claim or defense, we note that the fact that privileged information might become relevant in a given lawsuit could not alone be enough to establish an implied waiver. If it could, then the privilege would lose much of its protective force because "privileged information may be in some sense relevant in any lawsuit." See, e.g., In re Cty. of Erie, 546 F.3d 222, 229 (2d Cir. 2008).

¶18     We have thus suggested that to establish an implied waiver based on the assertion of a claim or defense, a party must show that the client asserted a claim or defense that depends on privileged information. See Trujillo, 144 P.3d at 543; see also In re Cty. of Erie, 546 F.3d at 229 (holding that for purposes of implied waiver, "a party must rely on privileged advice from his counsel to make his claim or defense"). Such a rule makes sense because as a matter of simple fairness, a party should not be permitted to assert a claim or defense that depends on privileged information while simultaneously relying on the privilege to keep that same information from the opposing party. See Trujillo, 144 P.3d at 543; see also Madera, 112 P.3d at 691 (explaining that the implied waiver doctrine "gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it") (quoting Bittaker v. Woodford, 331 F.3d 715, 720 (9th Cir. 2003)). To suggest otherwise would inappropriately allow a party to use as a sword the privilege that is afforded him or her as a shield. Trujillo, 144 P.3d at 543.

¶19    Here, the district court did not base its finding of an implied waiver of the attorney-client privilege on the disclosure of privileged communications to a third party. The court focused instead on whether State Farm placed privileged communications at issue by asserting in Patterson's affidavit claims or defenses focusing on advice that Patterson gave to State Farm. The court found that State Farm had asserted such claims or defenses. For three reasons, we disagree.

¶20    First, the affidavit contains only facts and does not assert (or even refer to) any claims or defenses. It provides a brief account of State Farm's initial disclosures, Patterson's discovery of the potential error in the medical lien amount, and his disqualification from the case. To the extent that Patterson's affidavit denies Goddard's allegation that he knowingly concealed the correct lien amount, we agree with the many other courts that have concluded that the mere denial of an allegation does not waive the attorney-client privilege. See, e.g., Lorenz v. Valley Forge Ins. Co., 815 F.2d 1095, 1098 (7th Cir. 1987) ("To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations."); accord Ward v. Succession of Freeman, 854 F.2d 780, 789 (5th Cir. 1988).

¶21    Second, the affidavit does not refer to any advice that Patterson gave to State Farm, or indeed to any communications between Patterson and State Farm. Accordingly, on its face, the affidavit does not concern any privileged information. See, e.g., Wesp, 33 P.3d at 196 (explaining that the attorney-client privilege "operates to protect communications between attorney and client relating to legal advice"); see also

9

Lopes v. Vieira, 688 F. Supp. 2d 1050, 1059 (E.D. Cal. 2010) ("The attorney-client privilege protects communications, not facts.").

¶22    Finally, State Farm does not offer the affidavit in support of any claim or defense that depends on privileged information or attorney advice. See Trujillo, 144 P.3d at 543. State Farm's opposition to Goddard's request for sanctions has not asserted an advice-of-counsel defense (e.g., by arguing that its discovery conduct was justified because Patterson recommended that conduct). Cf. Stender v. Archstone-Smith Operating Tr., No. 07-CV-2503-WJM-MJW, 2016 WL 8138601, at *4 (D. Colo. May 20, 2016) ("A party invoking the advice of counsel defense obviously waives the privilege as to anything communicated from attorney to client or vice versa on the subject of the attorney's opinion."). Nor could State Farm's opposition to Goddard's sanctions request be construed as alleging malpractice or the incompetence of counsel. Cf. Stone v. Satriana, 41 P.3d 705, 710 (Colo. 2002) ("When a client brings a malpractice allegation, the attorney-client privilege is deemed impliedly waived.").

¶23    Rather, State Farm apparently submitted Patterson's affidavit in support of its argument that it did not knowingly conceal the corrected lien amount and therefore a sanction in the form of a directed verdict was not appropriate. This argument does not depend on Patterson's advice, and thus, State Farm is not attempting to use privileged communications as a "sword" while simultaneously using the privilege as a shield. See Trujillo, 144 P.3d at 543.

10

¶24 Accordingly, we conclude that State Farm's submission of the Patterson affidavit did not place privileged communications at issue and, therefore, did not result in an implied waiver of the attorney-client privilege.

## III. Conclusion

¶25 For these reasons, we conclude that State Farm did not impliedly waive the attorney-client privilege when it submitted an affidavit from its former counsel directed to the factual issues implicated in opposing counsel's motion for sanctions. We therefore make the rule to show cause absolute.