Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 13, 2020

**2020 CO 4**

**No. 19SA129** *In re Rademacher v. Greschler*—**Attorney-Client Privilege**—**Implied Waiver**—**Statute of Limitations.**

In this proceeding brought pursuant to C.A.R. 21, plaintiff challenges the district court's ruling that she impliedly waived her attorney-client privilege by filing a legal malpractice complaint close to the expiration of the two-year statute of limitations and by then contesting defendant's statute of limitations defense.

The supreme court concludes that on the facts presented, plaintiff did not assert a claim or defense that either focused or depended on advice given by her counsel or that placed any privileged communications at issue. Accordingly, the court further concludes that plaintiff did not impliedly waive her attorney-client privilege in this case.

The court therefore makes the rule to show cause absolute.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2020 CO 4

## Supreme Court Case No. 19SA129
*Original Proceeding Pursuant to C.A.R. 21*
Boulder County District Court Case No. 17CV30454
Honorable Thomas F. Mulvahill, Judge

### In Re
### Plaintiff:

Carol Rademacher,

v.

### Defendant:

Ira E. Greschler.

### Rule to Show Cause Made Absolute
*en banc*
January 13, 2020

**Attorneys for Plaintiff:**
Purvis Gray Thomson, LLP
John A. Purvis
  *Boulder, Colorado*

Chalat Hatten & Banker, PC
James H. Chalat
  *Denver, Colorado*

**Attorneys for Defendant:**
Childs McCune LLC
Daniel R. McCune

Margrit Lent Parker
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

2

¶1 In this proceeding brought pursuant to C.A.R. 21, plaintiff Carol Rademacher challenges the district court's ruling that she impliedly waived her attorney-client privilege by filing a legal malpractice complaint close to the expiration of the two-year statute of limitations and by then contesting defendant Ira Greschler's statute of limitations defense.

¶2 We conclude that on the facts presented, Rademacher did not assert a claim or defense that either focused or depended on advice given by her counsel or that placed any privileged communications at issue. Accordingly, we further conclude that Rademacher did not impliedly waive her attorney-client privilege in this case.

¶3 We therefore make our rule to show cause absolute.

## I. Facts and Procedural Background

¶4 This case has a lengthy procedural history, including two appeals to the court of appeals, but only some of that history is pertinent here.

¶5 Greschler served as Rademacher's attorney on various matters for more than two decades. One of the matters in which Greschler represented Rademacher involved the settlement of potential civil claims that Rademacher had brought against a man named John Becker and his wife.

¶6 As pertinent here, for approximately ten years, Rademacher and Becker were involved in an extramarital relationship. Becker's wife ultimately confronted and assaulted Rademacher, after which Rademacher contacted the police. As a

3

result, the police charged Ms. Becker with assault, and Rademacher submitted a victim impact statement, asking that Ms. Becker be prosecuted to the full extent of the law.

¶7 Subsequently, the Beckers and Rademacher entered into a settlement agreement, under which Rademacher agreed not to pursue any claims against the Beckers and to ask the Boulder District Attorney's office to offer Ms. Becker a deferred sentence. In exchange for these promises, Becker executed a $300,000 promissory note payable to Rademacher.

¶8 Pursuant to the agreement, Rademacher signed a letter to the district attorney indicating her desire that Ms. Becker be offered a deferred sentence, and Becker made several payments on the note totaling $35,000. Becker, however, subsequently stopped making payments, and Rademacher, who was then still represented by Greschler, sued to enforce the agreement.

¶9 A jury ultimately found for Rademacher, and Becker appealed. On May 1, 2015, after Greschler had orally argued the case in the court of appeals but before the division issued its opinion, Rademacher's divorce attorney, Shawn Ettingoff, sent Greschler a letter "to convey [Rademacher's] dissatisfaction with [Greschler's] inadequate representation" in the dispute with Becker. This dissatisfaction principally concerned Greschler's report that at the oral argument in the court of appeals, the division, apparently to Greschler's surprise, had raised significant

4

public policy concerns regarding the validity and enforceability of the above-described settlement agreement. Much of Ettingoff's letter focused on how, in his view, Greschler should not have been surprised by the division's articulated public policy concerns and on how ill-prepared Ettingoff felt Greschler was for oral argument. The letter also noted that Greschler's conduct in representing Rademacher "helped create and perpetuate a situation that may very well lead to the reversal of the judgment in [Rademacher's] favor." And the letter set forth a variety of concerns regarding Greschler's billing practices. Notably, the letter made no demand on Greschler relating to any malpractice or potential malpractice claim. Instead, the letter made an offer to settle Greschler's claim against Rademacher for outstanding attorney fees.

¶10 Thereafter, on September 24, 2015, a division of the court of appeals issued its opinion, ruling that the agreement between Rademacher and Becker was void as against public policy. *Rademacher v. Becker*, 2015 COA 133, ¶¶ 24–28, 374 P.3d 499, 503–04.

¶11 On May 5, 2017, Rademacher then filed the present action against Greschler, asserting, among other things, a claim for professional negligence (legal malpractice). Several months later, Greschler moved for summary judgment on this claim, arguing that it was barred by the applicable statute of limitations. In support of this contention, he asserted that Rademacher's cause of action had

accrued no later than May 1, 2015, the date on which Ettingoff sent the letter on Rademacher's behalf detailing "the same allegations" of negligence that later appeared in her complaint in this case. Ettingoff's letter, Greschler asserted, demonstrated that Rademacher knew of her legal malpractice claim at that time and that the statute of limitations therefore required that she file her lawsuit no later than May 1, 2017, which she did not do.

¶12 Rademacher responded in pertinent part that her claim did not accrue at the time of Ettingoff's letter because she had suffered no compensable injury until the court of appeals division ruled on September 24, 2015 that the settlement agreement between Rademacher and Becker was void. She argued that until that time, any injury that she had suffered was merely speculative or contingent and thus any malpractice claim had not yet ripened. She further asserted that (1) she had hired Ettingoff to represent her only in her divorce; (2) his letter to Greschler merely sought to resolve a dispute over the fees charged by Greschler to Rademacher; and (3) the letter was a part of Ettingoff's efforts to get Rademacher's financial affairs in order in the wake of the divorce proceeding. Rademacher attached affidavits from herself and Ettingoff to support these contentions.

¶13 The district court granted Greschler's motion, but a division of the court of appeals subsequently reversed. *Rademacher v. Greschler*, No. 18CA114, ¶ 28 (Dec. 27, 2018). In so ruling, the division agreed that any injury to Rademacher

6

was speculative at the time Ettingoff sent his letter to Greschler and that therefore Rademacher "may not have suffered an injury or damages until the appellate decision on September 24, 2015, finally determined that the settlement agreement was void." *Id.* at ¶¶ 22, 24. The division thus concluded that "a genuine issue of fact exists concerning the timing of any injury" and therefore remanded the case to the district court for further proceedings. *Id.* at ¶¶ 24, 28.

¶14 On remand, Greschler requested that Rademacher produce all of Ettingoff's files regarding Ettingoff's representation of Rademacher from the time of his retention by her up to and including the date of Ettingoff's May 1, 2015 letter to Greschler. In support of this request, Greschler asserted that those records were relevant to the statute of limitations issue and also to impeach the Rademacher and Ettingoff affidavits that Rademacher had submitted in response to Greschler's motion for summary judgment.

¶15 Following a joint request for a discovery hearing and advanced briefing, a district court magistrate concluded that "the Plaintiff has placed at issue the attorney-client privilege by the filing of this lawsuit." Specifically, the magistrate stated, "In filing her complaint in this matter, the Plaintiff is asserting her claim is a timely and valid claim. It is through the filing of her complaint the Court finds the Plaintiff has put the protected information at issue by making it relevant to the case." Then, responding to Rademacher's argument that she did not put the

7

protected information at issue but rather Greschler did, the magistrate stated, "It was the Plaintiff's decision to file her complaint so near the expiration of the two-year statute of limitations that created the controversy. The result is a good-faith defense regarding the statute of limitations being advanced by the Defendant." Finally, the magistrate observed that "application of the privilege would deny the Defendant access to information that is vital to his defense and that no other means are available in which the Defendant can obtain this information."

¶16 In light of the foregoing, the magistrate found an implied waiver of the attorney-client privilege, although that waiver was limited in time and scope to information that was relevant to the statute of limitations defense. The magistrate thus directed Rademacher to deliver to the court Ettingoff's complete file, including billing records, from the time he was retained through May 2015, so that the magistrate could review those documents in camera to ensure that only documents materially related to the statute of limitations defense would be produced.

¶17 Rademacher sought district court review of the magistrate's ruling, but the district court affirmed the magistrate's findings of fact and conclusions of law. As pertinent here, the district court found the Nebraska case of *League v. Vanice*, 374 N.W.2d 849 (Neb. 1985), to be "exactly on point" and concluded that in this case, as was the case with the plaintiff and her counsel in *League*, Ettingoff's

communications with Rademacher related to when Rademacher knew of her claims and thus to whether her claims were timely.

¶18 Rademacher subsequently filed the present C.A.R. 21 petition, and we issued a rule to show cause.

## II. Analysis

¶19 We begin by discussing our jurisdiction to hear this matter. We then proceed to discuss Rademacher's arguments regarding the Ettingoff documents, and we conclude that Rademacher did not impliedly waive her attorney-client privilege merely by filing her suit near the expiration of the statute of limitations and by then contesting Greschler's statute of limitations defense.

## A. Original Jurisdiction

¶20 The exercise of our original jurisdiction under C.A.R. 21 rests within our sole discretion. *Fognani v. Young*, 115 P.3d 1268, 1271 (Colo. 2005). An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited both in its purpose and availability. *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001). As pertinent here, we have exercised our jurisdiction under C.A.R. 21 when an appellate remedy would be inadequate, *Fognani*, 115 P.3d at 1271, and when a party may suffer irreparable harm absent relief under C.A.R. 21, *People v. Turner*, 109 P.3d 639, 641 (Colo. 2005). We have also exercised our discretion under

C.A.R. 21 to hear cases that "raise issues of significant public importance that we have not yet considered." *Wesp*, 33 P.3d at 194.

¶21 Here, the magistrate and the district court determined that Rademacher had impliedly waived the attorney-client privilege protecting communications with one of her attorneys. The erroneous production of such communications would damage Rademacher and could not be cured on appeal because the damage would occur upon disclosure to Greschler, regardless of the ultimate outcome of any appeal from a final judgment. *See Gateway Logistics, Inc. v. Smay*, 2013 CO 25, ¶ 12, 302 P.3d 235, 239.

¶22 Accordingly, we deem it appropriate to exercise our original jurisdiction in this case.

## B. Implied Waiver of the Attorney-Client Privilege

¶23 "The attorney-client privilege shields from disclosure communications between an attorney and a client relating to legal advice." *State Farm Fire & Cas. Co. v. Griggs*, 2018 CO 50, ¶ 16, 419 P.3d 572, 575. The client, who is the holder of the privilege, may waive this privilege either expressly or impliedly. *Id.* A client impliedly waives the attorney-client privilege "when he or she (1) discloses privileged communications to a third party or (2) asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue." *Id.* The mere fact, however, that privileged information

might become relevant in a particular lawsuit "could not alone be enough to establish an implied waiver. If it could, then the privilege would lose much of its protective force because 'privileged information may be in some sense *relevant* in any lawsuit.'" *Id.* at ¶ 17, 419 P.3d at 575 (quoting *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)).

¶24 Accordingly, we have indicated that "to establish an implied waiver based on the assertion of a claim or defense, a party must show that the client asserted a claim or defense that *depends on* privileged information." *Id.* at ¶ 18, 419 P.3d at 575. "To suggest otherwise would inappropriately allow a party to use as a sword the privilege that is afforded him or her as a shield." *Id.*

### C. Rademacher Did Not Impliedly Waive Her Privilege Here

¶25 Here, Greschler contends, and the magistrate and the district court found, that Rademacher had placed privileged communications at issue and therefore impliedly waived the attorney-client privilege by implicitly representing that she had timely filed her claim. As the district court put it, "To defeat the affirmative defense that her claim is time barred, Plaintiff necessarily contends that she did not know she was damaged by Defendant's alleged negligence until less than two years before she filed suit. She has thus made her lack of knowledge a critical issue at trial." Although the timing of Rademacher's knowledge of her injury may well

be an issue in this case, for several reasons, we disagree that the potential relevance of such information effectuated an implied waiver of the attorney-client privilege.

¶26 First, Rademacher did not assert any claim that focused or depended on advice given by her attorney, as was required to establish an implied waiver of the privilege here. *See id.* at ¶ 16, 419 P.3d at 575. She merely asserted a legal malpractice claim against Greschler, and Greschler then raised a statute of limitations defense.

¶27 Second, we are unpersuaded that Rademacher's filing of her lawsuit close to the expiration of the applicable statute of limitations placed at issue privileged information that Rademacher may have received from her counsel. Greschler contends that by filing her lawsuit when she did, Rademacher implicitly asserted that her claim was timely, thereby placing at issue privileged communications that might be relevant to undermine this implicit assertion. If Greschler were correct, however, then any plaintiff would, as a matter of law, waive the attorney-client privilege simply by filing a claim close to the expiration of the pertinent statute of limitations. Greschler, however, cites no applicable authority supporting so broad a proposition, and we have seen none.

¶28 Moreover, to the extent that Greschler is suggesting that Rademacher's allegedly delayed filing effected an implied waiver of the privilege by making confidential communications potentially relevant, we reject this contention. As an

initial matter, such a suggestion incorrectly conflates the concepts of waiver and relevance. In addition, as noted above, we have previously made clear that the mere fact that privileged information might become relevant in a lawsuit cannot alone establish an implied waiver because if it did, then the privilege would lose much of its protective force, given that privileged information might in some sense be relevant in any lawsuit. *See id.* at ¶ 17, 419 P.3d at 575.

¶29 Third, we perceive nothing about Ettingoff's May 1, 2015 letter that can be construed as effectuating an express or implied waiver of the attorney-client privilege. In his letter, Ettingoff expressed Rademacher's dissatisfaction with Greschler's performance at the oral argument in the court of appeals, and he voiced concern that Greschler's lack of preparation "may very well lead to" the reversal of the judgment that Rademacher had previously obtained. Nothing on the face of this letter, however, indicated that Rademacher believed that she then had a viable malpractice claim against Greschler. To the contrary, the letter suggested Rademacher's understanding that she had not yet suffered any injury but had reason to fear that an adverse decision by the division might cause her damage. Moreover, Ettingoff tellingly made no demand to settle any existing or potential malpractice claim against Greschler. Rather, he offered only to settle Greschler's then-existing claim against Rademacher for outstanding attorney fees. This was fully consistent with Rademacher's position that Ettingoff's role was

limited to working on matters relating to her divorce proceeding and that Ettingoff was merely seeking to get Rademacher's financial affairs in order in connection with that proceeding.

¶30 Finally, notwithstanding Greschler's assertion to the contrary, the record shows that *he*, not Rademacher, placed in issue when Rademacher knew or reasonably should have known of her alleged injury, thereby causing the statute of limitations to begin to run. Greschler asserted a statute of limitations defense here, and he bore the burden of proving that defense. *Crosby v. Am. Family Mut. Ins. Co.*, 251 P.3d 1279, 1283 (Colo. App. 2010). We have seen no authority supporting Greschler's suggestion that Rademacher impliedly waived her attorney-client privilege merely by requiring Greschler to meet his burden of proving the affirmative defense that he asserted, and Greschler cites no such authority. Moreover, we cannot perceive how Greschler's assertion of a statute of limitations defense placed in issue *Rademacher's* privileged communications. *See State Farm*, ¶ 16, 419 P.3d at 575 (noting that a client impliedly waives the attorney-client privilege when he or she—not the opposing party—asserts a claim or defense focusing on advice given by the attorney, thereby placing the allegedly privileged communications at issue). If Greschler's assertion of a statute of limitations defense could be deemed to have placed Rademacher's privileged communications at issue, then the privilege again would lose much of its

14

protective force because a defendant could always effectuate a waiver of the plaintiff's privilege merely by asserting a facially viable statute of limitations defense. Greschler cites no applicable authority supporting such a proposition, and again we have seen none.

¶31 In reaching the foregoing conclusions, we are not persuaded by Greschler's reliance on *Mountain States Telephone & Telegraph Co. v. DiFede*, 780 P.2d 533, 542–44 (Colo. 1989), and *League*, 374 N.W.2d at 855–57.

¶32 In *Mountain States*, 780 P.2d at 542–43, we concluded that the plaintiff had impliedly waived the attorney-client privilege with respect to communications that she had had with her counsel by expressly contending that she relied to her detriment on statements made by opposing counsel, notwithstanding the fact that she had obtained advice on the same matter from her own counsel. There, the plaintiff challenged the validity of a separation agreement between her and her ex-husband, arguing that her ex-husband's attorney had fraudulently induced her to sign the agreement by falsely representing that it was unenforceable at the time it was signed. *Id.* at 538, 542–43. The plaintiff, however, had consulted with her own counsel regarding the enforceability of this agreement before she signed it, and the defendant thus contended that any reliance by the plaintiff on defense counsel's statement was unreasonable. *Id.* On these facts, we concluded that the plaintiff had impliedly waived any privilege that she had had in her

15

communications with her own counsel because her claim of justifiable reliance on opposing counsel's misstatement had placed those confidential communications, which tended to undermine her reliance claim, at issue. *Id.* In this regard, we found "particularly instructive" the Nebraska Supreme Court's decision in *League*, 374 N.W.2d at 856, which, as noted above, the district court in this case also found to be persuasive. *Mountain States*, 780 P.2d at 543.

¶33 In *League*, in order to avoid a statute of limitations defense asserted by the defendant, the plaintiff alleged that the defendant had concealed the events and transactions at issue, thereby precluding the plaintiff from asserting his claims earlier. *League*, 374 N.W.2d at 856. The district court, however, admitted testimony from the plaintiff's former attorney that he had informed the plaintiff years earlier regarding the transactions at issue and that the plaintiff had considered but chose not to file suit. *Id.* at 852–53. The plaintiff argued that the admission of this testimony violated the attorney-client privilege, but the Nebraska Supreme Court disagreed, concluding that by alleging concealment, the plaintiff had injected his knowledge (or lack thereof) of the transactions at issue. *Id.* at 855–57. The court reasoned that the plaintiff could not "thrust his lack of knowledge into the litigation as a foundation or condition necessary to sustain his claim against [the defendant] while simultaneously retaining the lawyer-client privilege to frustrate proof of knowledge negating the very foundation or

16

condition necessary to prevail on the claim asserted against [the defendant]." *Id.* at 856.

¶34    *Mountain States* and *League* are readily distinguishable from the case now before us.  In both of those cases, the plaintiffs expressly alleged that (1) the defendant or defense counsel had misinformed the plaintiffs about pertinent facts or had concealed information from the plaintiffs and (2) the misinformation or concealed facts caused the plaintiffs to act or refrain from acting to protect their rights.  Thus, in both cases, the plaintiffs' allegations directly raised questions regarding what the plaintiffs knew and when they knew it, and the courts were unwilling to allow the plaintiffs to assert justifiable reliance while at the same time withholding privileged information that undermined such assertions.

¶35    Here, in contrast, Rademacher never alleged that either misinformation provided by Greschler or information that he concealed caused any delay in filing her lawsuit.  Indeed, she made no express allegation placing her knowledge at issue.  She simply filed her lawsuit, and when Greschler raised a statute of limitations defense, she responded by arguing that her claim was timely based on the fact that she had suffered no compensable injury until the division's ruling that her settlement agreement with the Beckers was void.  For the reasons set forth above, were we to agree that such facts established an implied waiver of the attorney-client privilege, then the privilege would be waived any time a plaintiff

filed a complaint close in time to the expiration of the applicable statute of limitations and any time a defendant could viably assert that privileged communications were possibly relevant to his or her defense. Such a conclusion, however, would be inconsistent with our above-described case law and, in our view, would stretch the doctrine of implied waivers of privilege too far.

### III. Conclusion

¶36 For the reasons set forth above, we conclude that Rademacher neither asserted a claim or defense that focused or depended on privileged information nor otherwise placed at issue allegedly privileged information when she filed her malpractice action close to the expiration of the statute of limitations or when she then contested Greschler's statute of limitations defense. Accordingly, on the facts presented here, we further conclude that Rademacher did not impliedly waive her attorney-client privilege.

¶37 We therefore make our rule to show cause absolute.