The opinion summaries are not part of the Colorado Supreme Court's opinion. They have been prepared solely for the reader's convenience. As such, they may not be cited or relied upon. If there is any discrepancy between the language in the summary and the opinion, the language in the opinion controls.

ADVANCE SHEET HEADNOTE

## 2024 CO 38

**No. 24SA34, *In Re Jordan v. Terumo BCT*—Privileged Communications and Confidentiality.**

Plaintiffs in this toxic tort action sought relief under C.A.R. 21, and this court issued a rule to show cause that now requires it to address two issues: (1) whether the district court erred in finding that the attorney-client privilege does not apply to protect a client's confidential communications of facts to trial counsel; and (2) whether the district court erred in finding that, when trial counsel provided to an expert a spreadsheet of information learned in confidential client communications, plaintiffs waived—and C.R.C.P. 26(a)(2) requires disclosure of—the underlying client communications that the expert never saw.

The court now concludes that although the underlying facts are not privileged, the district court erred in finding that the attorney-client privilege does not apply to protect a client's confidential communications of such facts to trial counsel. Clients routinely provide factual information to their counsel. This does not mean that opposing counsel is entitled to obtain the clients' communications

containing such facts. Rather, the proper method of obtaining such facts is through discovery directed at the clients.

The court further concludes that the district court erred in finding that C.R.C.P. 26(a)(2) required plaintiffs to disclose not only the spreadsheet provided to their expert, but also any privileged and confidential communications that the expert never saw but that counsel used to prepare the spreadsheet. The disclosure of the spreadsheet to the expert in this case did not effect a waiver of privilege. Rather, plaintiffs were obligated to produce only the information that they provided to their expert.

Accordingly, the court makes its rule to show cause absolute.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2024 CO 38

**Supreme Court Case No. 24SA34**
*Original Proceeding Pursuant to C.A.R. 21*
Jefferson County District Court Case Nos. 20CV31457 & 20CV31481
Honorable Lindsay L. VanGilder, Judge

## In Re

### Plaintiffs:

Ann Jordan; Bruce Howard Brown; David Gutierrez; Amber Tuffield; Geraldine Valdez; Martha Ann Ratzloff; Daniel Ratzloff; Bradley Schaak; Cindy Fuhrmann; Kenneth Noble, in his individual capacity and on behalf of decedent Kay Noble; Cynthia Bauman; Susan Kaberline; and Blake Richard Darnell,

v.

### Defendants:

Terumo BCT, Inc.; Terumo BCT Sterilization Services, Inc.; and John Does 1-20.

## Rule Made Absolute
*en banc*
June 10, 2024

**Attorneys for Plaintiffs:**
Lewis Roca Rothgerber Christie LLP
Kenneth F. Rossman, IV
Kendra N. Beckwith
 *Denver, Colorado*

**Attorneys for Defendants Terumo BCT, Inc. and Terumo BCT Sterilization Services, Inc.:**
Bryan Cave Leighton Paisner LLP
Michael J. Hofmann
Kaitlin M. DeWulf
   *Denver, Colorado*

**Attorneys for Respondent Jefferson County District Court:**
Philip J. Weiser, Attorney General
Brianna S. Tancher, Assistant Attorney General
   *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Martinez Law Colorado, LLC
Anna N. Martinez
   *Denver, Colorado*

**Attorneys for Amici Curiae Edelson PC and Zaner Harden Law, LLP:**
Cohen|Black Law, LLC
Nancy L. Cohen
Aidan T. O'Neil
   *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE GABRIEL delivered the Opinion of the Court.

¶1     Plaintiffs in this toxic tort action retained an expert to determine and opine on where and when they were exposed to a carcinogen that they claim was emitted from a plant operated by defendants Terumo BCT, Inc. and Terumo BCT Sterilization Services, Inc. (collectively, "Terumo").  To facilitate the completion of the expert's analysis, plaintiffs' counsel provided to the expert a spreadsheet detailing where each plaintiff lived and worked and when.

¶2     Terumo demanded that plaintiffs produce to them not only the spreadsheet but also any communications between plaintiffs and their counsel that contained the information that plaintiffs' counsel used to create the spreadsheet.  Over plaintiffs' objection that such communications were privileged and beyond the scope of disclosures required by C.R.C.P. 26(a)(2), the district court granted Terumo's request and ordered plaintiffs to produce "the raw facts or data reported by plaintiffs" to their counsel.

¶3     Plaintiffs then sought relief under C.A.R. 21, and we issued a rule to show cause that now requires us to address two issues: (1) whether the district court erred in finding that the attorney-client privilege does not apply to protect a client's confidential communications of facts to trial counsel; and (2) whether the district court erred in finding that, when trial counsel provided to an expert a spreadsheet of information learned in confidential client communications,

3

plaintiffs waived—and C.R.C.P. 26(a)(2) requires disclosure of—the underlying client communications that the expert never saw.

¶4 We now conclude that although the underlying facts are not privileged, the district court erred in finding that the attorney-client privilege does not apply to protect a client's confidential communications of such facts to trial counsel. Clients routinely provide factual information to their counsel. This does not mean that opposing counsel is entitled to obtain the clients' communications containing such facts. Rather, the proper method of obtaining such facts is through discovery directed at the clients.

¶5 We further conclude that the district court erred in finding that C.R.C.P. 26(a)(2) required plaintiffs to disclose not only the spreadsheet provided to their expert, but also any privileged and confidential communications that the expert never saw but that counsel used to prepare the spreadsheet. Contrary to Terumo's assertion and the district court's apparent belief, the disclosure of the spreadsheet to the expert in this case did not effect a waiver of privilege. Rather, plaintiffs were obligated to produce only the information that they provided to their expert.

¶6 Accordingly, we make our rule to show cause absolute.

# I. Facts and Procedural History

¶7 Terumo operates a plant in Lakewood, Colorado that sterilizes health care products and medical equipment. Terumo uses and emits ethylene oxide, a carcinogen, as part of its sterilization process.

¶8 In 2020 and 2021, plaintiffs filed three lawsuits against Terumo in Jefferson County District Court. A group of plaintiffs led by plaintiff Ann Jordan filed one lawsuit, plaintiff Blake Richard Darnell filed a second lawsuit, and plaintiff Susan Kaberline filed a third. It appears that the Jordan and Kaberline actions have been consolidated for trial and that, although the Darnell action will be tried separately, discovery in that case has been coordinated with discovery in the other cases. The matter before us was filed on behalf of all of the plaintiffs, and we address all of the plaintiffs jointly.

¶9 In their lawsuits, plaintiffs allege that (1) they lived or worked near the Terumo plant, (2) they were exposed to the ethylene oxide emitted from the plant, and (3) this exposure caused them to develop various types of cancer. To help establish that Terumo's emissions caused their cancers, plaintiffs retained an expert witness to conduct air dispersion modeling to estimate each plaintiff's alleged exposure to Terumo's ethylene oxide emissions. To assist the expert in performing this analysis, plaintiffs provided their counsel, in emails and during interviews, information relating to their potential exposures. This information

5

primarily showed where plaintiffs had lived and worked and when. Counsel ultimately compiled this information in a spreadsheet and provided the spreadsheet to the expert. Counsel did not, however, provide the expert with any of the underlying communications between plaintiffs and counsel.

¶10 Discovery proceeded, and the district court referred the resolution of a number of expert-related disputes to a special master.

¶11 Thereafter, during a deposition, the expert testified that he had never met or spoken to any of the plaintiffs when forming his opinion. When asked by Terumo, however, whether plaintiffs' counsel had provided him with any documents that he used to prepare his report, counsel instructed the expert not to answer. In doing so, counsel noted that because the question of which documents needed to be produced was pending in front of the special master, the expert was not to disclose what he had been provided until that issue was resolved.

¶12 At Terumo's request, the special master subsequently ordered plaintiffs to produce the information used by the expert in performing his exposure modeling, "as long as it [was] limited to information specified in C.R.C.P. 26(b)(4)(D)(I), (II), and (III)." That rule exempts from work-product protections information relating to the expert's compensation, "facts or data that the party's attorney provided and which the expert considered in forming" his opinions, and any assumptions that

6

the party's attorney provided and on which the expert relied in forming his opinions. C.R.C.P. 26(b)(4)(D)(I)–(III).

¶13 In response to this order, plaintiffs produced to Terumo the spreadsheet that they had given to their expert as well as a redacted email from counsel to the expert with what appeared to be updates to the information in the spreadsheet. Plaintiffs did not, however, disclose any of their communications to their counsel.

¶14 Terumo then filed a motion for entry of contempt, seeking to compel plaintiffs to produce those attorney-client communications. In its motion, Terumo argued that because the attorney-client privilege does not protect the underlying and otherwise unprivileged facts that are incorporated into a client's communications to or with counsel, it was entitled to the underlying communications (which Terumo characterized as the "underlying factual data") "to verify the accuracy of Plaintiffs' counsels' summaries upon which [the expert] relied."

¶15 Plaintiffs disagreed, contending that they were not required to produce the underlying communications because, although the facts and data that the expert considered are discoverable, the expert "never received, viewed, or considered" the communications that Terumo seeks and therefore those communications were not discoverable under C.R.C.P. 26(a)(2).

7

¶16 The district court ultimately granted Terumo's motion, ordering that "any underlying facts and data in any communication between individual plaintiffs and their counsel shall be discovered, in whatever form that takes (emails, surveys, questionnaires, interview notes, etc.)." In so ruling, the court opined that "even though [the expert] never saw or considered the attorney-client communication that resulted in the spreadsheet, he did actually consider that underlying data and assumptions in forming his opinions," and, thus, "that underlying data is discoverable under C.R.C.P. 26(b)(1)." The court also reasoned that because plaintiffs' counsel had been "involved in the data collection process," plaintiffs' counsel had "waived any privilege they wish[ed] to claim associated with that data collection." It thus ordered plaintiffs to produce such facts and data within fourteen days of the entry of its order.

¶17 Plaintiffs moved for clarification and reconsideration of this order, asking the court to clarify whether plaintiffs were required to produce privileged attorney-client communications such as emails or attorney work-product prepared in the course of litigation. To the extent that the court intended to require them to produce such communications, plaintiffs asked the court to reconsider, arguing again that because the expert had never considered those communications, the attorney-client privilege had not been waived and the communications were not discoverable.

8

¶18 Plaintiffs' counsel attached to this motion for clarification and reconsideration signed declarations from each plaintiff confirming the information that was contained in the spreadsheet. In these declarations, plaintiffs attested that they had communicated the facts of their location history to their attorneys in "verbal conversations and written communications" and that they had understood at the time that counsel "conveyed the facts and data from our communications to the exposure modeling expert . . . to estimate [their] exposure to ethylene oxide emitted from the Terumo facility." They also declared that they had "always understood [their communications with counsel] to be privileged" and that they did not "waive, and have never intended to waive, privilege over any such communications."

¶19 Terumo opposed plaintiffs' motion, arguing, as pertinent here, that it was entitled to plaintiffs' communications to their counsel because (1) the expert did not have "to lay eyes on the documents to be 'considered' by him"; and (2) by allowing counsel "to collect the documents in the manner they did," plaintiffs placed "their communications directly at issue" and thus waived the attorney-client privilege.

¶20 The district court issued an order denying plaintiffs' motion and standing on its prior order. In so ruling, the court opined that the signed declarations were insufficient because they did not afford Terumo the opportunity to confirm or

9

analyze whether there had been changes in plaintiffs' reporting of exposure sites or timeframes or whether there had been omissions from plaintiffs' counsel's summaries and reports. The court further rejected plaintiffs' claim that the attorney-client privilege protected their underlying communications. On this point, the court observed, "A plaintiff's statements about the facts of where she lived and worked, and the timeframes of possible exposure, squarely fall within the underlying facts and data that form the basis of the claims and are discoverable," as the court had previously ordered. The court then pointed to the sentence in plaintiffs' declarations acknowledging that they knew that counsel would be providing the expert with the underlying facts of their communications, which the court took to mean that plaintiffs had waived any privilege related to communications with counsel regarding the facts relevant to their exposures. In so ruling, the court did not address the fact that the declarations also stated that plaintiffs had not waived, and were not waiving, the attorney-client privilege as to those communications. The court did, however, say that plaintiffs could make redactions and create a privilege or work-product log, if necessary. The court then ordered plaintiffs to produce within seven days "the raw facts or data reported by plaintiffs" to their counsel, and it stated that it would entertain no further motions, reconsiderations, or pleadings on this issue.

¶21 Plaintiffs then petitioned this court for a rule to show cause why the district court's orders finding an implied waiver of the attorney-client privilege and requiring them to disclose communications between plaintiffs and their counsel should not be vacated. We issued the rule to show cause, and this matter has now been fully briefed.

## II. Analysis

¶22 We begin by addressing our jurisdiction under C.A.R. 21 and the standard of review for discovery orders. We then proceed to address, in turn, the two issues now before us.

## A. C.A.R. 21 and Standard of Review

¶23 The exercise of our original jurisdiction under C.A.R. 21 is within our sole discretion. *State Farm Fire & Cas. Co. v. Griggs*, 2018 CO 50, ¶ 12, 419 P.3d 572, 574. An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited in both purpose and availability. *Id.* Although discovery orders are usually interlocutory in nature and thus reviewable only on appeal, we have exercised our discretion under C.A.R. 21 to review whether a district court has abused its discretion in circumstances in which no other adequate appellate remedy would exist. *Fox v. Alfini*, 2018 CO 94, ¶ 15, 432 P.3d 596, 600.

¶24 Here, the district court ordered plaintiffs to produce communications that they claim are protected by the attorney-client privilege. The damage to plaintiffs

from the erroneous production of such communications could not be cured on appeal because the damage would occur upon disclosure to Terumo, regardless of the ultimate outcome of any appeal from a final judgment.

¶25 Accordingly, we deem it appropriate to exercise our original jurisdiction in this case.

¶26 We review a district court's discovery orders for an abuse of discretion. *Fox*, ¶ 17, 432 P.3d at 600. A district court abuses its discretion when its decision is "manifestly arbitrary, unreasonable, or unfair, or based on a misapprehension of the law." *Cath. Health Initiatives Colo. v. Earl Swensson Assocs., Inc.*, 2017 CO 94, ¶ 8, 403 P.3d 185, 187.

## B. Attorney-Client Privilege

¶27 Plaintiffs first argue that the district court erred in concluding that the attorney-client privilege did not apply to their confidential communications of facts to their counsel. Specifically, they assert that although the underlying facts included in their communications to counsel are not privileged, they cannot be forced to disclose to opposing counsel factual statements contained in communications with their attorneys. Requiring them to turn over these communications simply because they contain non-privileged facts would, plaintiffs claim, "obliterate the purpose and heart of the [attorney-client]

12

privilege" and would chill the types of frank and complete conversations that are indispensable to an attorney's proper representation of a client. We agree.

¶28 Section 13-90-107(1)(b), C.R.S. (2023), which codified the common-law attorney-client privilege, provides, in pertinent part, "An attorney shall not be examined without the consent of his client as to *any communication* made by the client to him or his advice given thereon in the course of professional employment . . . ." (Emphasis added.) This privilege is premised on the notion that candid and open communication from the client to the attorney without fear of disclosure will promote the orderly administration of justice. *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000).

¶29 It has long been settled that "[t]he attorney-client privilege extends only to matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *Id.*; *accord People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006); *see also All. Constr. Sols., Inc. v. Dep't of Corr.*, 54 P.3d 861, 865 (Colo. 2002) ("[T]he [attorney-client] privilege protects not only information and advice communicated from the attorney to the client, but also communications to the attorney to enable him to give sound and informed legal advice."); *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1046–47 (Colo. 1986) ("Communications between attorney and client and advice given by the attorney must remain confidential to insure the proper functioning of the legal

13

system. Observance of the obligation to hold inviolate the confidences developed in the attorney-client relationship not only facilitates the full development of facts essential to proper representation of the client but also encourages the general public to seek early legal assistance."). The privilege, however, "protects only the communications to the attorney; it does not protect any underlying and otherwise unprivileged facts that are incorporated into a client's communication to his attorney." *Gordon*, 9 P.3d at 1123. As a result, the client may not refuse to disclose relevant facts within the client's knowledge merely because the client incorporated a statement of those facts into a communication to counsel, although the client cannot be compelled to disclose what they said or wrote to counsel. *Id.* (We hasten to add that attaching a non-privileged, non-confidential document to a communication with counsel does not render that document privileged or immunize it from proper discovery.)

¶30    Applying these principles to the facts before us, we conclude that because the communications from plaintiffs to their counsel conveying the relevant facts were indisputably for the purpose of obtaining legal advice, they are protected by the attorney-client privilege. Thus, although plaintiffs cannot refuse to provide the *underlying facts and data* that Terumo seeks, absent a waiver of the attorney-client privilege, which we discuss below, they cannot be compelled to provide their *communications* to their counsel. *See id.*

14

¶31 In so concluding, we are not persuaded by Terumo's argument that plaintiffs' communications to their counsel were not confidential and therefore were not privileged. Terumo appears to claim that the attorney-client privilege does not apply here because plaintiffs intended their counsel to disclose to the expert the contents of their communications with counsel, and, thus, there was no reasonable expectation that the communications themselves would be treated as confidential.

¶32 Terumo's argument overlooks the fundamental distinction in our case law between communications and facts. As noted above, facts, even when made within a client's communication to counsel, are not protected by the attorney-client privilege and are discoverable. Thus, whether those facts are shared with an expert while preparing for trial or divulged to opposing counsel during discovery, the party sharing those facts has not disclosed anything that can be deemed privileged or confidential. That does not mean, however, as Terumo appears to suggest, that the client no longer has a reasonable expectation that the communications themselves will be treated as confidential. It cannot be that sharing with a third party (e.g., an expert) information that is properly discoverable by an opposing party means that a client's communications to their counsel conveying such information are no longer privileged. If the rule were as Terumo suggests, then opposing parties would be entitled to obtain in discovery

all manner of communications between their opponents and opposing counsel (because parties necessarily must convey facts to their counsel), and this would serve only to chill open communications between parties and their lawyers.

¶33 Nor does it suffice to say that plaintiffs can redact their communications with counsel to ensure that only non-privileged facts are disclosed. As noted above, attorneys and their clients routinely communicate about the facts of a particular case. If all attorney-client communications were now subject to discovery as long as all parts of the communications other than the non-privileged facts were redacted, then the burden on parties and their counsel—not to mention the already high costs of the discovery process—would increase dramatically. Such a rule could also become a tool for harassing and vexatious litigation practices. We decline to adopt such a rule.

¶34 Accordingly, we conclude that the district court erred in determining that the attorney-client privilege did not apply to the communications of facts by plaintiffs to their counsel.

¶35 As noted above, however, and as plaintiffs appear to concede, plaintiffs are required to provide the raw facts and data in their possession, either in written discovery or by deposition. The portions of the record that have been provided to us reflect that in the course of at least Terumo's deposition of the expert whose report is at issue here, when Terumo sought discovery of such underlying facts

and data, plaintiffs' counsel instructed the witness not to answer those questions. We do not know whether plaintiffs' counsel similarly instructed other witnesses, and particularly any of the plaintiffs, not to answer such questions. For the reasons set forth above, Terumo is entitled to discover from plaintiffs the facts and data underlying the spreadsheet prepared by their counsel. Terumo is precluded from obtaining in discovery only the communications between plaintiffs and their counsel that might have conveyed those facts and data to counsel. To the extent that plaintiffs precluded Terumo from discovering the underlying facts and data directly from plaintiffs, whether in depositions or otherwise, Terumo must be given the opportunity to seek such discovery, including by way of reopening depositions for that purpose, if plaintiffs' counsel prevented such discovery, whether through instructions not to answer or otherwise. We leave to the district court—and we express no opinion on—how that court should address this discovery issue if Terumo has been given a full and fair opportunity to obtain the information at issue directly from plaintiffs and did not timely pursue that discovery.

## C. Waiver and C.R.C.P. 26(a)(2)

¶36 Plaintiffs next argue that the district court erred in concluding that when their counsel provided their expert with a spreadsheet containing information learned in confidential client communications, without providing the

17

communications themselves, any privilege has been waived and C.R.C.P. 26(a)(2) requires disclosure of the underlying, confidential documents. Plaintiffs contend that merely providing the expert with the spreadsheet did not waive the attorney-client privilege as to the underlying communications because the expert never considered those communications. Moreover, plaintiffs assert that because C.R.C.P. 26(a)(2) requires disclosure of only the data or other information that the expert considered in forming his opinions, they cannot be compelled to disclose the communications between themselves and their counsel, which the expert never saw. Again, we agree.

¶37    Although, as noted above, the attorney-client privilege protects matters communicated by or to the client in the course of gaining counsel, advice, or direction as to the client's rights or obligations, *Gordon*, 9 P.3d at 1123, a client may be compelled to disclose what they said in a communication if, among other things, the client impliedly waived the attorney-client privilege, *Trujillo*, 144 P.3d at 544. As pertinent here, a client might impliedly waive the attorney-client privilege if the client discloses "*privileged communications* to a third party." *Id.* (emphasis added). If, however, the client discloses to the third party only non-privileged information, such as factual assertions, and did not place any privileged communications at issue or disclose any privileged communications to a third party, then the client has not impliedly waived the privilege. *Id.* at 544–45.

18

¶38 C.R.C.P. 26(a)(2), in turn, sets forth the mandatory disclosures that a party must make in connection with a retained expert. That rule requires that a party produce, among other things, "a list of the data or other information considered by the witness in forming the opinions." C.R.C.P. 26(a)(2)(B)(I)(b).

¶39 An expert "considers documents or materials for the purposes of Rule 26(a)(2)(B)" when he "reads or reviews them before or in connection with forming" his opinion, even if he "does not rely upon or ultimately rejects the documents or materials." *Gall ex rel. Gall v. Jamison*, 44 P.3d 233, 241 (Colo. 2002). If, however, the expert has not considered the document or material in connection with formulating his opinions in the case, then C.R.C.P. 26(a)(2) does not require the production of that document or material. *Garrigan v. Bowen*, 243 P.3d 231, 239 (Colo. 2010) (concluding that an expert was not required to produce the data underlying a study on which she had relied in formulating her opinions because she had not considered that data in forming those opinions).

¶40 Applying these principles to the facts before us, we conclude that the district court erred in determining that plaintiffs had waived the attorney-client privilege as to their underlying communications. Although, as noted above, plaintiffs shared with their expert a spreadsheet containing the non-privileged, factual information that counsel had compiled from confidential communications with plaintiffs, the disclosure of that non-privileged information does not mean that

19

plaintiffs impliedly waived the attorney-client privilege as to the privileged communications. Rather, for plaintiffs to have impliedly waived the attorney-client privilege over their confidential communications, they would have needed to disclose the *communications* to the expert. Nothing in the record indicates, however, and Terumo does not appear to suggest, that the expert saw any of the communications sent from plaintiffs to their counsel.

¶41 Moreover, because nothing in the record suggests that the expert ever read or reviewed (i.e., considered) those underlying communications, and because C.R.C.P. 26(a)(2) compels the disclosure of only that which the expert has considered in forming his opinion, we conclude that the district court erred in ordering plaintiffs to produce, pursuant to C.R.C.P. 26(a)(2), their communications with their counsel.

¶42 In reaching this conclusion, we are unpersuaded by Terumo's argument that a party waives the attorney-client privilege when she assures the court and the opposing party that "she is telling the court (and the opposing party) the same facts she told her lawyer." Specifically, Terumo argues that plaintiffs cannot "use the privilege as a sword—assuring the court that everyone has the same facts—while using it as a shield to prevent discovery into those facts." Plaintiffs are doing no such thing here. To the contrary, plaintiffs agree that the non-privileged, factual information contained within their privileged

20

communications is discoverable; they are merely asserting, as they are entitled to do, the attorney-client privilege over confidential communications in which plaintiffs conveyed the facts to their counsel. Terumo does not cite, and we are not aware of, any authority that provides that simply because a party maintains the accuracy of non-privileged, factual information provided to their counsel that an opposing party is entitled to discover privileged or confidential communications to verify those facts. Indeed, if the rule were as Terumo claims, then an opposing party could overcome many legitimate claims of attorney-client privilege simply by asserting that the facts that a party disclosed in a deposition, an interrogatory response, or, as here, an expert's report were allegedly different from those that the client had shared with their attorney. As plaintiffs suggest, such a rule would substantially undermine the attorney-client privilege.

¶43 We are likewise not convinced that because plaintiffs' counsel allegedly acted as "data-collectors," Terumo is entitled to plaintiffs' privileged communications with their counsel in order (1) to uncover "the data-collection and data-shaping process used to create an expert's opinion" or (2) to discern plaintiffs' counsel's "methodology used to create and convey facts to an expert" to rebut plaintiffs' and the expert's assertion that the process used to collect the location history data was "reliable." One of the key roles that all attorneys play in representing their clients is to engage in fact-developing conversations to ensure

21

that counsel is providing sound and informed legal advice. Again, if such communications can be deemed not privileged merely because counsel compiled, distilled, and transmitted non-privileged facts to third parties, such as an expert, then no client would feel confident communicating with their counsel because counsel could not assure the client that those conversations would remain privileged. As noted above, this is simply not the law.

¶44 Finally, Terumo's argument that plaintiffs "could have (and should have) followed standard practice by giving their testifying expert facts about their exposure from sources equally available to all parties" does not mean, as Terumo claims, that "law and fairness now require disclosure of that expert-creating-and-shaping process." The fact that plaintiffs' counsel chose to compile a spreadsheet of the non-privileged facts contained within their clients' communications, rather than employing a method that Terumo might prefer (or that it alleges is "standard practice"), does not mean that Terumo is entitled to plaintiffs' privileged communications. To the extent that Terumo wishes to test the facts on which plaintiffs' expert relied, alterations to that expert's opinion, or the expert's ultimate conclusion, it may do so through appropriate discovery tools, such as depositions and written discovery directed to plaintiffs and the expert, or through cross-examination of plaintiffs or their expert, pointing out any inconsistencies or discrepancies between the facts that plaintiffs had proffered and

those on which the expert relied. Terumo may not, however, test the facts on which the expert relied by compelling discovery of plaintiffs' privileged communications.

¶45 Accordingly, we conclude that the district court erred in finding that C.R.C.P. 26(a)(2) required plaintiffs to disclose not only the factual, non-privileged information provided to their expert, but also any privileged and confidential communications that the expert never saw but that counsel used to prepare the spreadsheet on which the expert relied.

¶46 Again, to the extent that plaintiffs have resisted discovery that we have concluded is appropriate (and we do not know if they have), Terumo must be afforded the opportunity to obtain such discovery.

### III. Conclusion

¶47 For these reasons, we conclude that the district court erred in finding that the attorney-client privilege does not apply to protect a client's confidential communications of non-privileged facts to trial counsel. Although clients routinely provide factual information to their counsel, this does not mean that an opposing counsel is entitled to obtain in discovery the clients' communications with their counsel conveying such facts.

¶48 We further conclude that because the disclosure of the spreadsheet to the expert in this case did not effect a waiver of privilege, and because plaintiffs were

obligated to produce only the information that they provided to the expert, the district court erred in finding that C.R.C.P. 26(a)(2) required plaintiffs to disclose not only the non-privileged, factual information provided to their expert, but also any privileged and confidential communications that the expert never saw but that counsel used to prepare the spreadsheet that the expert considered.

¶49 Accordingly, we make our rule to show cause absolute, and we remand this case to the district court for further proceedings consistent with this opinion.