The PEOPLE of the State
of Colorado, Plaintiff,

v.

Eric Lee MADERA, Defendant.

No. 04SA213.

Supreme Court of Colorado,
En Banc.

May 31, 2005.

Driscoll Law Office, Robert J. Driscoll, Ryan P. Montgomery, Denver, for Defendant–Petitioner.

Ken Buck, District Attorney, Nineteenth Judicial District, Phil Clark, Deputy District Attorney, Greeley, for Plaintiff–Respondent.

MULLARKEY, Chief Justice.

## I. Introduction

In this original proceeding pursuant to C.A.R. 21, we review the district court's order requiring defendant Eric Lee Madera's former criminal defense counsel, Deputy Public Defender Derek Samuelson, to produce his entire file for the trial court's *in camera* review. The court's order was issued after the defendant objected to the prosecution's attempt to gain access to Samuelson's file in preparation for a hearing on the defendant's motion to withdraw his guilty plea. We set aside the court's order.

## II. Facts and Procedural History

Madera was charged with attempted murder, and Samuelson represented him from his charging through his guilty plea to first degree assault.[1] Before sentencing, Madera filed a pro se motion to terminate his representation by Samuelson and asked the court to appoint conflict counsel for him. The court appointed a private attorney to represent him and he is now represented by successor counsel.

Madera moved to withdraw his plea of guilty pursuant to Crim. P. 32(d), alleging that Samuelson had provided ineffective assistance of counsel relating to Madera's guilty plea. The People objected to the defendant's motion to withdraw his plea and requested that the defendant execute a written waiver of attorney-client privilege. No such waiver was executed.

Subsequently, the prosecution served a subpoena duces tecum on Samuelson, seeking production of all documents in Samuelson's possession relating to his representation of Madera that are relevant to Madera's ineffective assistance of counsel claim. Madera filed a motion to quash the subpoena duces tecum which was denied by the trial court. The trial court found that Madera had waived his attorney-client privilege and ordered Samuelson to turn over all documents relating to Madera for its *in camera* review.

As we understand the facts, the prosecution subpoenaed Samuelson's file after a deputy district attorney interviewed him and concluded that Samuelson could not recall specific dates and facts about Madera's case without referring to his case file. At the interview, Samuelson refused the prosecution's request that he disclose any notes or documents relevant to Madera's claim that his guilty plea was not made knowingly, voluntarily, and intelligently.

We issued a rule to show cause why the district court's ruling should not be vacated and we now make the rule absolute.

## III. Analysis

The decision of a trial court to conduct an *in camera* review of a defense counsel's case file has serious implications and should be undertaken only in the clearest of cases, when the information sought to be discovered is well defined and all other reasonable means of discovering the information have been exhausted.

In general, the contents of a defense attorney's case file are likely to be protected by the attorney-client privilege and the attorney work product privilege. These privileges have developed as essential parts of the adversarial system of adjudication. Without the privileges, frank discussions would not occur between clients and their attorneys,

---

1. Madera was charged with attempted murder pursuant to § 18–2–101, C.R.S. (2004) and pled guilty to first degree assault under § 18–3–202, C.R.S. (2004).

and attorneys would be unable to explore fully the best means of presenting their clients' cases.[2]

## A. Attorney–Client Privilege

■ The attorney-client privilege applies to "confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Lesslie*, 24 P.3d 22, 26 (Colo.App.2000). Furthermore, "the attorney-client privilege is personal with the client ... Hence, the privilege may be waived only by the client." *Losavio v. Dist. Court*, 188 Colo. 127, 533 P.2d 32, 35 (1975). "The burden of establishing such a waiver rests with the party seeking to overcome the privilege." *Wesp v. Everson*, 33 P.3d 191, 198 (Colo.2001).

■ *In camera* review is appropriate when a party opposing assertion of the attorney-client privilege makes some showing that an exception to the attorney-client privilege applies or that the privilege has been waived either explicitly or impliedly. *See Caldwell v. Dist. Court*, 644 P.2d 26, 32–33 (Colo.1982)(discussing and applying crime-fraud exception to attorney-client privilege).

In addition to the difficulty · involved in reviewing an attorney's case file, the reviewing court must consider the presumption in favor of the attorney-client privilege. Indeed,

> the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through subpoena or court order.

*Hickman v. Taylor*, 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Thus, before engaging in an *in camera* review of an attorney's file, " 'the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that" the attorney-client privilege does not protect all of the documents in the file. *United States v. Zolin*, 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)(*quoting* this court's decision in *Caldwell*, 644 P.2d at 33). *Caldwell* placed an "intermediate burden" on the party seeking discovery of privileged documents. 644 P.2d at 33. While we did not require the moving party to prove a prima facie case, this court did require that party to show that the privilege exception applies to each document it sought to discover. *Id.* at 32–33.

Once a reasonable good faith belief has been shown by the moving party, the trial court may then exercise its discretion in deciding whether *in camera* review is appropriate after considering:

> the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin*, 491 U.S. at 572, 109 S.Ct. 2619.

The attorney-client privilege is not absolute, of course. There are recognized exceptions to the privilege, and the privilege may be waived in certain circumstances. But the exceptions are simply exceptions. "To drive the privilege away, there must be 'something to give colour to the charge;' there must be 'prima facie evidence that it has some foundation in fact.' " *Clark v. U.S.*, 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933). The rule is that attorney-client communications

---

**2.** As noted in *Pearce v. Pearce*:

Truth, like all other good things, may be loved unwisely—may be pursued too keenly—may cost too much. And, surely the meanness and the mischief of prying into a man's confidential consultations with his legal advisor, the general evil of infusing reserve and dissimulation, uneasiness, and suspicion and fear, into those communications which must take place, and which unless a condition of perfect security, must take place uselessly or worse, are too great a price to pay for the truth itself.

1 DeG. & Son. 28–9; 16 L.J. Ch. 153, 159 (1846).

are privileged and protected from discovery by opposing parties.

A trial court should be reluctant to review the contents of an attorney's case file precisely because of the importance of the privileges involved. *In camera* disclosure to the court is still a form of disclosure. Even if it goes no further and the court declines to release any documents to the moving party, the court's review could have a chilling effect on attorneys and their clients, especially if *in camera* review occurred frequently or was easily obtained. *See e.g., PHE, Inc., v. Dep't of Justice,* 983 F.2d 248, 253 (D.C.Cir. 1993)("*In camera* review is generally disfavored.").

A trial court undertakes a significant workload burden when it reviews an attorney's case file. *Zolin,* 491 U.S. at 571, 109 S.Ct. 2619. Unless the information sought is very carefully delineated, the trial court will have no guidance as it examines the case file. Review in such an instance will be tedious at best and probably unproductive as well.

■ In summary, *Zolin, Caldwell,* and related cases require the trial court to focus on the facts and circumstances of each case to determine the scope of the implied waiver. Before granting a request for *in camera* inspection of an attorney's case file, the trial court must determine (1) as precisely as possible, the information sought to be discovered, (2) whether the information is relevant to a matter at issue, (3) whether the information could be obtained by any other means, (4) whether the information is privileged, (5) if it is privileged, whether the privilege has been waived, (6) if it is privileged, but has been waived, either explicitly or impliedly, the scope of the waiver. By using this analytical framework, a trial court can determine whether the moving party has shown a reasonable good faith belief that *in camera* inspection will reveal that the documents sought fall within an exception to the attorney-client privilege or that the defendant waived the privilege.

**B. Implied Waiver of Attorney–Client Privilege**

■ Courts have found implied waiver of the attorney-client privilege when a defendant places the allegedly privileged communication at issue in the litigation, because "any other rule would enable the client to use as a sword the protection which is awarded him as a shield." *Mountain States Tel. & Tel. Co. v. DiFede,* 780 P.2d 533, 544 (Colo. 1989) (*quoting Cerney v. Paxton & Gallagher Co.,* 83 Neb. 88, 92, 119 N.W. 14, 16 (1908) ).

■ Implied waiver may occur when the defendant raises a claim of ineffective assistance of counsel as to any communications relevant to the defendant's claim of ineffective assistance of counsel. *Bittaker v. Woodford,* 331 F.3d 715, 720 (9th Cir.2003).

As the *Bittaker* court observed, implied waiver in these circumstances is comparable to a situation where the trial court "gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." *Id.* (calling this concept "the fairness principle"). We agree with the *Bittaker* court that finding an implied waiver is necessary to "ensure compliance with the fairness principle." *Id.* at 728. Thus, the trial court "must enter appropriate orders clearly delineating the contours of the limited waiver before" the privilege holder discloses communications which would be privileged attorney-client communications but for the privilege holder's assertion of an ineffective assistance of counsel claim. *Id.*

Here, the prosecution asserts that Madera impliedly waived his attorney-client privilege by seeking to withdraw his guilty plea on grounds of ineffective assistance of counsel. We reject the prosecution's broad assertion that Madera has waived his privileges entirely. *See Id.* at 720 ("the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it"). Rather than endorsing a blanket waiver, we have adopted the following three-prong test for implied waiver of the attorney-client privilege which asks whether:

(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it

relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

*Mountain States Tel.*, 780 P.2d at 543–44 (*quoting League v. Vanice*, 221 Neb. 34, 44, 374 N.W.2d 849, 856 (1985)). We turn now to the claims asserted in the case before us.

### C. Withdrawal of a Guilty Plea

The nature and scope of an implied waiver depends on the context in which it arises. To prevail in this case, Madera must meet the standards both for ineffective assistance of counsel and for withdrawal of a guilty plea. To prove ineffective assistance of counsel, "first, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ With respect to his guilty plea, Madera "may not, as a matter of right, have his plea of guilty withdrawn or changed." *People v.Chavez*, 730 P.2d 321, 327 (Colo.1986) (*quoting Maes v. People*, 155 Colo. 570, 396 P.2d 457, 459 (1964)). Rather, "to be entitled to withdraw a guilty plea prior to sentencing ... the defendant has the burden of demonstrating a 'fair and just reason' for the withdrawal." *People v. Lopez*, 12 P.3d 869, 871 (Colo.App.2000). The *Maes* court gave examples of situations where withdrawal of a guilty plea should be permitted, such as "where a defendant may be surprised or influenced into a plea of guilty entered by mistake or under a misconception of the nature of the charge" or "where fear, fraud, or official misrepresentation" were alleged. *Maes*, 396 P.2d at 459.

The grounds for alleged ineffective assistance of counsel in a guilty plea context may vary widely. It may be claimed that the defense counsel gave the client bad advice or that the attorney failed to adequately investigate or prepare the defendant's case. In *People v. Pozo*, the defendant sought withdrawal of his guilty plea based on his former counsel's failure to advise him that he could be deported as a result of his guilty plea. 746 P.2d 523, 529–30 (Colo.1987). *See also People v. Sudduth*, 991 P.2d 315, 318 (Colo.App.1999)(defendant alleged that he was entitled to withdraw his guilty plea because his counsel erroneously advised him that he would be eligible for parole within ten years). In *People v. Gies*, the defendant sought to withdraw his guilty plea by claiming, among other things, that his counsel was ineffective in not investigating all possible defenses. 738 P.2d 398, 399 (Colo.App.1987). Different types of ineffective assistance of counsel claims would raise very different implied waivers of the attorney-client privilege and the documents that would be relevant to the claims would be very different as well.

### IV. Application of Law to this Case

■ On the record before us, the trial court's *in camera* inspection order was plainly premature. Madera's pro se motion to withdraw his guilty plea asserted that "the options and terms of the prearranged plea agreement were not fully explained to the Defendant." Specifically, Madera stated that he lacked "full knowledge that Trial Court was mandated by § 18–1–105(9)(a)(II) C.R.S., to sentence Defendant within the aggravated range." Under the fairness principle, we find that Madera waived his attorney-client privilege with respect to communications he had with Samuelson about the sentence he faced by pleading guilty. The People may interview or examine Samuelson under oath with respect to his sentencing advice. Samuelson is required to disclose any relevant written materials he may have regarding Madera's sentence.[3]

---

**3.** Although not directly raised by the parties below, we have noted with regard to the attorney work product doctrine that "documents prepared in anticipation of litigation or for trial are discoverable 'only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.' " *National Farmers Union Property and Cas. Co. v. Dist. Court*, 718 P.2d 1044, 1047 (Colo.1986)(*quoting*, C.R.C.P. 26(b)(3) ).

Thus, although Crim. P. 16(III)(f) allows for *in camera* review of documents to determine whether they are covered by the attorney work product doctrine, in order to obtain *in camera* review the

With the guidance given in this opinion, we expect that the parties in this case and in similar future cases will be able to resolve their discovery disputes without court intervention. If, however, resort to the trial court is necessary, the moving party must show that the other means of resolving the dispute have been exhausted and that the requested relief is narrowly tailored to fit the implied waiver of the attorney-client privilege involved in the case.

## V. Conclusion

For these reasons, we make our rule to show cause absolute, vacate the trial court's order, and remand the case for further proceedings consistent with this opinion.

party seeking inspection of the nonconfidential portions of an attorney's documents must show necessity and that obtaining the information through other means would cause "undue hardship."

On this record, the People have not made the requisite showings of necessity and undue hardship as required to invoke *in camera* review of attorney work product.