Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
March 21, 2022

2022 CO 14

**No. 21SA308, *People v. Cortes-Gonzalez* — Attorney-Client Privilege — Attorney-Client Confidentialities — Implied Waiver — Fairness Principle — Automatic Statutory Waiver — § 18-1-417, C.R.S. (2021) — Ineffective Assistance of Counsel — Postconviction Remedies — Crim. P. 35(c) — C.A.R. 21.**

The supreme court reaches multiple holdings in this case.

First, the court holds that whenever a defendant alleges ineffective assistance of counsel, the defendant automatically waives the attorney-client privilege, as well as any other confidentiality, between counsel and the defendant, but only with respect to the information that is related to the ineffective assistance claim. *See* § 18-1-417(1), C.R.S. (2021). And, with the prohibition on the disclosure of attorney-client confidentialities removed, the allegedly ineffective counsel has no reason to refuse to discuss with, or disclose to, the prosecution such confidentialities, so long as they are related to the ineffective assistance claim advanced. Thus, when the prosecution properly requests confidential information

related to an ineffective assistance claim, the allegedly ineffective counsel must produce the requested information without undue delay.

Second, the court holds that the procedures set forth in Crim. P. 35(c)(3)(V) in no way modify section 18-1-417. No provision in Crim. P. 35(c)(3)(V) mentions section 18-1-417 or deals with attorney-client confidentialities. Contrary to one of the contentions advanced in this case, the scope of the statutory waiver is contingent on the nature of the ineffective assistance claim lodged, not on any action taken by the court pursuant to Crim. P. 35(c)(3)(V).

The court recognizes, however, that prosecutors will generally wait to seek confidential information related to an ineffective assistance claim until, pursuant to Crim. P. 35(c)(3)(V), the court has requested a response from them or set a hearing. This is the preferred practice. Given the importance of the protection afforded confidential attorney-client information, prosecutors would do well to avoid requesting access to such information until they have a need for it.

Third, the court holds that it is improper for prosecutors to request an order or use a Crim. P. 17 subpoena duces tecum ("SDT") to attempt to access the confidential information covered by section 18-1-417(1). In light of section 18-1-417(1), there's no need to seek an order or use an SDT. And, since the statutory waiver is cabined by the nature of the ineffective assistance claim, it is improper for prosecutors to ever request the production of confidential

information that's unrelated to the claim.  Hence, whether through an order or an SDT, attempting to compel the production of the allegedly ineffective counsel's entire case file without regard to the nature of the claim runs afoul of Colorado law.

Fourth, the court holds that the prosecution doesn't have an inherent right to an in camera review of the allegedly ineffective counsel's case file — even if the purpose of the review is to ensure that all the information subject to the waiver will be produced.  In camera disclosure to the court is still a disclosure, and even if it goes no further and the court declines to share any documents with the parties, the review itself could have a chilling effect on attorneys and their clients, especially if prosecutors are able to frequently and easily obtain in camera review.  Prosecutors must trust that the allegedly ineffective counsel will proceed in accordance with all ethical duties.

Finally, the court holds that after the allegedly ineffective counsel has produced the confidential information covered by the automatic waiver in section 18-1-417(1), the court may grant a request for an in camera review of the allegedly ineffective counsel's entire case file if the prosecution first clears the hurdle erected in *People v. Madera*, 112 P.3d 688, 691 (Colo. 2005).  As relevant here, under *Madera*, the prosecution must have a reasonable good faith belief that in camera inspection of the allegedly ineffective counsel's case file will reveal that the

additional information sought falls within the statutory waiver. 112 P.3d at 691.

In the event the court finds that the prosecution has satisfied the *Madera* standard,

it should order the allegedly ineffective counsel to produce the entire case file for

an in camera review to determine whether there is additional information related

to the ineffective assistance claim. After any in camera review, the court must

disclose to the prosecution claim-related information not previously produced.

# The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2022 CO 14

**Supreme Court Case No. 21SA308**
*Original Proceeding Pursuant to C.A.R. 21*
Weld County District Court Case Nos. 15CR74, 16CR671, 18CR273 & 18CR686
Honorable Timothy G. Kerns, Judge

**In Re
Plaintiff:**

The People of the State of Colorado,

v.

**Defendant:**

Jared Cortes-Gonzalez.

**Rule Made Absolute**
*en banc*
March 21, 2022

**Attorneys for Plaintiff:**
Michael J. Rourke, District Attorney, Nineteenth Judicial District
Travis M. Winter, Deputy District Attorney
*Greeley, Colorado*

**Attorneys for Defendant:**
Megan A. Ring, Public Defender
Megan Bishop, Deputy Public Defender
Michele Newell, Deputy Public Defender
Ashley E. Sullivan, Deputy Public Defender
*Greeley, Colorado*

**Attorney for Respondent Stephanie Perkins:**
Reppucci Law Firm, P.C.
Jonathan D. Reppucci
    *Denver, Colorado*

**Attorneys for Respondent Weld County District Court:**
Philip J. Weiser, Attorney General
Michael Kotlarczyk, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Amici Curiae Office of Alternate Defense Counsel and Colorado Criminal Defense Bar:**
Law Offices of Ann M. Roan, LLC
Ann M. Roan
    *Boulder, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ**, **JUSTICE HOOD**, **JUSTICE GABRIEL**, **JUSTICE HART**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE SAMOUR delivered the Opinion of the Court.

¶1     A party may not use the attorney-client privilege as both a shield and a sword. This is by no means breaking news. Indeed, the rule's vintage is the late 1800s. *See Hunt v. Blackburn*, 128 U.S. 464 (1888). In *Blackburn*, the Supreme Court explained, in the simplest of terms, that "[w]hen Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and Mr. Weatherford [her attorney], and respecting which she testified, she waived her right to object to his giving his own account of the matter." *Id.* at 470–71. The Court viewed this proposition as so self-evident that it supported it with neither authority nor analysis. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).

¶2     In the ensuing centuries, courts and commentators alike have come to call this rule "the fairness principle"—a label that fits like a glove. If, facing an ineffective assistance of counsel claim from a client who has placed attorney-client confidentialities at issue, an attorney were precluded from testifying about those confidentialities, it would unfairly set up a procedural mousetrap and inhibit, if not altogether derail, the truth-finding process. Without a waiver of the attorney-client privilege, such a client would be permitted to use the privilege not only as intended—a shield to protect attorney-client confidentialities—but also as a sword to pursue an ineffective assistance claim based on those very confidentialities. Talk about unfair.

3

¶3     Not surprisingly, the parties in this interlocutory appeal see eye-to-eye on the fairness principle. They lock horns, however, on how exactly it should be effectuated in the context of a postconviction Crim. P. 35(c) claim of ineffective assistance of counsel. Today we hope to illuminate this dimly lit area of Colorado law.

¶4     First, we hold that whenever a defendant alleges ineffective assistance of counsel, the defendant automatically waives the attorney-client privilege, as well as any other confidentiality, between counsel and the defendant, but only with respect to the information that is related to the ineffective assistance claim. *See* § 18-1-417(1), C.R.S. (2021). Such a waiver extends to attorney work product and to any confidentiality between the defendant or counsel and any expert witness retained or appointed in connection with the defendant's legal representation. *Id.*[1]

¶5     Nothing in section 18-1-417(1) renders the applicable waiver discretionary. The waiver is automatic. And, with the prohibition on the disclosure of attorney-client confidentialities removed, the allegedly ineffective counsel has no

---

[1] Because the parties largely focus on the attorney-client privilege, so do we. For the sake of convenience, we sometimes refer to attorney-client confidentialities as "confidentialities," "confidential attorney-client information," or "confidential information."

reason to refuse to discuss with, or disclose to, the prosecution such confidentialities, so long as they are related to the ineffective assistance claim advanced. Thus, when the prosecution properly requests confidential information related to an ineffective assistance claim, the allegedly ineffective counsel must produce the requested information without undue delay.

¶6 Second, we hold that the procedures set forth in Crim. P. 35(c)(3)(V) in no way modify section 18-1-417. No provision in Crim. P. 35(c)(3)(V) mentions section 18-1-417 or deals with attorney-client confidentialities. Contrary to alternate defense counsel's contention, the scope of the statutory waiver is contingent on the nature of the ineffective assistance claim lodged, not on any action taken by the court pursuant to Crim. P. 35(c)(3)(V).

¶7 We recognize, however, that prosecutors will generally wait to seek confidential information related to an ineffective assistance claim until, pursuant to Crim. P. 35(c)(3)(V), the court has requested a response from them or set a hearing. In our view, this is the preferred practice. Given the importance of the protection afforded confidential attorney-client information, prosecutors would do well to avoid requesting access to such information until they have a need for it.

¶8 Third, we hold that it is improper for prosecutors to request an order or use a Crim. P. 17 subpoena duces tecum ("SDT") to attempt to access the confidential

information covered by section 18-1-417(1). The statutory waiver is automatically triggered by the assertion of an ineffective assistance claim, and the scope of that waiver is moored to the nature of the claim. There's no need to seek an order or use an SDT.

¶9 Relatedly, because the statutory waiver is cabined by the nature of the ineffective assistance claim, it is improper for prosecutors to ever request the production of confidential information that's unrelated to the claim. Hence, whether through an order or an SDT, attempting to compel the production of the allegedly ineffective counsel's entire case file without regard to the nature of the claim runs afoul of Colorado law.

¶10 Fourth, we hold that the prosecution doesn't have an inherent right to an in camera review of the allegedly ineffective counsel's case file—even if the purpose of the review is to ensure that all the information subject to the waiver will be produced. As we've previously recognized, in camera disclosure to the court is still a disclosure, and even if it goes no further and the court declines to share any documents with the parties, the review itself could have a chilling effect on attorneys and their clients, especially if prosecutors are able to frequently and easily obtain in camera review. Prosecutors must trust that the allegedly ineffective counsel will proceed in accordance with all ethical duties.

¶11   Finally, we hold that *after* the allegedly ineffective counsel has produced the confidential information covered by the automatic waiver in section 18-1-417(1), the court may grant a request for an in camera review of the allegedly ineffective counsel's entire case file if—and only if—the prosecution clears the hurdle we erected in *People v. Madera*, 112 P.3d 688, 691 (Colo. 2005). As relevant here, under *Madera*, the prosecution must have a reasonable good faith belief that in camera inspection of the allegedly ineffective counsel's case file will reveal that the additional information sought falls within the statutory waiver. 112 P.3d at 691. In the event the court finds that the prosecution has satisfied the *Madera* standard, it should order the allegedly ineffective counsel to produce the entire case file for an in camera review to determine whether there is additional information related to the ineffective assistance claim. After any in camera review, the court must disclose to the prosecution claim-related information not previously produced.

## I. Procedural History

¶12   Jared Cortes-Gonzalez picked up four felony cases in Weld County. In November 2018, he entered into a global disposition that required him to plead guilty in all four cases, including two in which he faced complaints to revoke his probation. The plea agreement indicated that, while the sentences would be within the court's discretion, the cumulative prison term would not exceed twenty years. In mid-January 2019, the district court sentenced Cortes-Gonzalez in

accordance with the plea agreement to an aggregate term of twenty years in prison.

¶13 Two weeks later, Cortes-Gonzalez filed a "Motion to Consider 35-C," alleging that his attorney (the "public defender") had provided ineffective assistance by failing to accurately advise him of the plea agreement's potential punishment. According to Cortes-Gonzalez, the public defender had represented to him that he would be sentenced to either eight years in a "halfway house" or eight to twelve years in prison. Cortes-Gonzalez added that the public defender had coerced him into executing the plea agreement.

¶14 The day after receiving Cortes-Gonzalez's motion, the district court appointed alternate defense counsel to represent him. Nevertheless, Cortes-Gonzalez proceeded to file additional pro se motions alleging ineffective assistance of counsel and seeking to withdraw his November 2018 guilty pleas.

¶15 More than two years later, in April 2021, alternate defense counsel submitted a supplemental Crim. P. 35(c) motion. In support of Cortes-Gonzalez's request to withdraw his guilty pleas, she advanced a two-pronged ineffective assistance claim: (1) Cortes-Gonzalez's guilty pleas were not entered knowingly because he was not fully aware of the sentencing consequences he faced under the plea agreement; and (2) a language barrier prevented Cortes-Gonzalez from entering his guilty pleas knowingly and voluntarily. Thereafter, Cortes-Gonzalez

8

submitted yet another pro se motion, this time asserting that the public defender had provided ineffective assistance by failing to file a motion for reconsideration of his sentences.

¶16 In June 2021, the prosecution asked the district court to issue an order finding a "waiver of all confidential attorney-client privileges or relationships affected by the pursuit" of the Crim. P. 35(c) ineffective assistance claim. The court granted the motion the next day. Two weeks later, the prosecution served an SDT on the public defender to compel the production under seal of "ANY AND ALL papers, documents, and records" in her possession related to Cortes-Gonzalez's four cases. The public defender objected to the SDT. She conceded that the ineffective assistance claim impliedly waived the attorney-client privilege to some extent, but she maintained that it was improper for the court to require her to produce her case files in their entirety. Doubling down, the prosecution requested that the court order the public defender to either produce her entire case files for an in camera review or show cause as to why she was refusing to comply with the SDT. The court granted the motion and scheduled a subpoena return hearing.

¶17 Two days before the hearing, the public defender filed a motion to reconsider. She again argued that any confidential information unrelated to the ineffective assistance claim was off-limits.

¶18     The public defender brought two copies of each of her case files to the hearing: an unredacted copy and a copy with redactions based on the nature of Cortes-Gonzalez's ineffective assistance claim and the corresponding scope of the waiver. She again made clear that, although she had no issue giving the redacted copies to the prosecution, she opposed releasing (even to the court for an in camera review) the unredacted copies. Without objection, the court released the redacted copies to the prosecution. The court then ordered the public defender, over her objection, to turn over the unredacted copies for an in camera review. But it did so without making any findings or undertaking any legal analysis.

¶19     The court seemed persuaded by the prosecution's concerns about having to accept the public defender's representation that all of the information related to Cortes-Gonzalez's ineffective assistance claim had been disclosed in the redacted copies of her case files. The following exchange reflects the court's rationale:

> COURT:              So, I understand the standard. I guess the question I have is how do I know that there's portions of the file that [are unrelated] to the [Crim. P. 35(c)] Petition unless I review both the redacted and unredacted?
>
> PUBLIC DEFENDER:    And, Judge, to that, I would argue that it's the same anytime anyone subpoenas anything specifically. We are here to bring documents that we feel are responsive to the particular 35(c) and this SDT . . . .
>
> COURT:              I don't want to be flippant, but—

10

PUBLIC DEFENDER:    No, I know.

COURT:    Would the standard be the same?  I'm going to rely on the District Attorney or the Greeley Police Department to produce what's responsive and I don't have to review it?

¶20    The court deferred its in camera review for three days to afford the public defender an opportunity to file a C.A.R. 21 petition in our court.  The public defender then promptly filed a C.A.R. 21 petition, and we issued a rule to show cause.

## II.  Original Jurisdiction

¶21    Our first order of business is to explain why we decided to exercise our original jurisdiction pursuant to C.A.R. 21.  C.A.R. 21 gives us sole discretion to exercise our original jurisdiction.  *See* C.A.R. 21(a)(1).  We are mindful, however, that an original proceeding under C.A.R. 21 is extraordinary in nature and is limited both in its purpose and availability.  *Rademacher v. Greschler*, 2020 CO 4, ¶ 20, 455 P.3d 769, 772.  Consequently, as pertinent here, we have limited the exercise of our original jurisdiction to such circumstances as when "an appellate remedy would be inadequate, . . . a party may otherwise suffer irreparable harm, or . . . a petition raises issues of significant public importance that we have not yet considered."  *People v. Sherwood*, 2021 CO 61, ¶ 13, 489 P.3d 1233, 1238 (quoting *People v. Lucy*, 2020 CO 68, ¶ 11, 467 P.3d 332, 335).

11

¶22 In her C.A.R. 21 petition, the public defender argued that an original proceeding was her only remedy. We agreed.

¶23 An order erroneously requiring disclosure of information protected by the attorney-client privilege—even to the court for an in camera review—cannot be cured on direct appeal. After all, you can't unring a bell. Once an improper disclosure has occurred, the damage has been done, regardless of the ultimate outcome of any direct appeal. *See Rademacher*, ¶ 21, 455 P.3d at 773. Accordingly, we deemed it appropriate to exercise our original jurisdiction in this matter.

## III. Standard of Review

¶24 Whether the district court erred in requiring the production of the public defender's unredacted case files for an in camera review turns largely on section 18-1-417, which we interpret de novo. *See Hunsaker v. People*, 2021 CO 83, ¶ 15, 500 P.3d 1110, 1114 (noting that we review questions of statutory interpretation de novo). And to the extent that our analysis isn't rooted in our reading of section 18-1-417, it entails a question of law, which we likewise review de novo. *See Rudnicki v. Bianco*, 2021 CO 80, ¶ 12, 501 P.3d 776, 779.

## IV. Analysis

¶25 We begin with a general discussion of the attorney-client privilege. We then pivot to interpret section 18-1-417, which provides an automatic waiver of that privilege with respect to information related to a criminal defendant's ineffective

assistance claim. Lastly, we address the specific contentions advanced by the parties. Because we ultimately conclude that the district court erred, we make absolute the rule to show cause.

## A. Attorney-Client Privilege

¶26 The attorney-client privilege covers "confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations." *Madera*, 112 P.3d at 690 (quoting *People v. Lesslie*, 24 P.3d 22, 26 (Colo. App. 2000)). Such communications "must remain confidential to insure the proper functioning of the legal system." *Nat'l Farmers Union Prop. & Cas. Co. v. Dist. Ct.*, 718 P.2d 1044, 1046 (Colo. 1986). As we've explained, adhering to "the obligation to hold inviolate the confidences developed in the attorney-client relationship not only facilitates the full development of facts essential to proper representation of the client but also encourages the general public to seek early legal assistance." *Id.* at 1047.

¶27 Only the client, the holder of the attorney-client privilege, may waive it. *Rademacher*, ¶ 23, 455 P.3d at 773. But such a waiver may be express or implied. *Id.* When the defendant in a criminal case raises a claim of ineffective assistance of counsel, the defendant impliedly waives the attorney-client privilege as to any attorney-client confidentialities relevant to the claim. *Madera*, 112 P.3d at 691. As

13

we observed in *Madera*, echoing what the Ninth Circuit Court of Appeals had said

regarding the fairness principle:

> [I]mplied waiver in these circumstances is comparable to a situation where the trial court "gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it." [*Bittaker*, 331 F.3d at 720] (calling this concept "the fairness principle"). We agree with the *Bittaker* court that finding an implied waiver is necessary to "ensure compliance with the fairness principle." *Id.* at 728.

*Madera*, 112 P.3d at 691.

¶28      Approximately a month before we issued our decision in *Madera*, our

General Assembly codified the concept of an implied waiver of the attorney-client

privilege with respect to confidentialities relevant to an ineffective assistance claim

in a criminal case. *See* § 18-1-417.[2] We turn to section 18-1-417 now.

## B. Section 18-1-417

¶29      Section 18-1-417, "Ineffective assistance of counsel claims—waiver of

confidentiality," states:

> (1) Notwithstanding any other provision of law, whenever a defendant alleges ineffective assistance of counsel, the defendant automatically waives any confidentiality, including attorney-client and work-product privileges, between counsel and defendant, and between the defendant or counsel and any expert witness retained or appointed in connection with the representation, but only with respect to the information that is related to the defendant's claim of

---

[2] We did not discuss section 18-1-417 in *Madera*.

ineffective assistance. After the defendant alleges ineffective assistance of counsel, the allegedly ineffective counsel and an expert witness may discuss with, may disclose any aspect of the representation that is related to the defendant's claim of ineffective assistance to, and may produce documents related to such representation that are related to the defendant's claim of ineffective assistance to the prosecution without the need for an order by the court that confidentiality has been waived.

(2) If the allegedly ineffective counsel or an expert witness has released his or her file or a portion thereof to defendant or defendant's current counsel, defendant or current counsel shall permit the prosecution to inspect and copy any or all portions of the file that are related to the defendant's claim of ineffective assistance upon request of the prosecution.

¶30 The first sentence of subsection (1) establishes an automatic waiver of the attorney-client privilege whenever the defendant in a criminal case lodges an ineffective assistance claim, but only with respect to information related to the claim. § 18-1-417(1). This automatic waiver, though limited in scope by the nature of the claim, casts a wide net. It covers the attorney-client and attorney work-product privileges, as well as any other confidentiality between the allegedly ineffective counsel and the defendant. *Id.* Additionally, it extends to confidentialities between the defendant or the allegedly ineffective counsel and any expert witness retained. *Id.*

¶31 Alternate defense counsel argues that, in response to a proper request by the prosecution, the allegedly ineffective counsel is permitted, but not required, to provide confidential information related to the ineffective assistance claim filed.

15

In so doing, she relies on the repeated use of the word "may" in the second sentence of subsubsection (1): "[T]he allegedly ineffective counsel and an expert witness *may* discuss with, *may* disclose any aspect of the representation . . . , and *may* produce documents related to such representation . . . ." § 18-1-417(1) (emphases added). The public defender appears to adopt a similar view in her reply brief. We disagree with this interpretation of subsection (1).

¶32 Subsection (1) provides, in no uncertain terms, that the waiver is automatic: "[W]henever a defendant alleges ineffective assistance of counsel, the defendant *automatically* waives any confidentiality, including [the] attorney-client . . . privilege[], between counsel and defendant . . . ." *Id.* (emphasis added). This plain language clearly establishes that the waiver happens automatically the moment a criminal defendant alleges ineffective assistance of counsel. *See Ronquillo v. EcoClean Home Servs., Inc.*, 2021 CO 82, ¶ 22, 500 P.3d 1130, 1135 (explaining that we ascertain legislative intent by giving the plain language of a statute its commonly accepted and understood meaning).

¶33 When a statute doesn't define a particular term, "we may consider a definition in a recognized dictionary." *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218. Automatic means: "(Of a device or process) working with little or no direct human control. Done or occurring spontaneously, without conscious thought or intent." *Automatic*, Black's Law Dictionary (11th ed. 2019); *accord*

16

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ *automatic* (defining automatic as "largely or wholly involuntary," "acting or done spontaneously or unconsciously," or "done or produced as if by machine: mechanical") [https://perma.cc/9C5B-8TZQ].

¶34 It follows that when something is automatic, it occurs spontaneously, unconsciously, or largely or wholly involuntarily. This leaves no room for the exercise of discretion. Had the legislature intended to make the statutory waiver discretionary, it presumably would have said so. It certainly wouldn't have used the word "automatically" to describe how the attorney-client privilege is waived when a defendant brings an ineffective assistance claim.

¶35 And, with the prohibition on the disclosure of attorney-client confidentialities removed, the allegedly ineffective counsel has no reason to refuse to discuss with, or disclose to, the prosecution such confidentialities, so long as they are related to the ineffective assistance claim advanced. That is, after an ineffective assistance claim is lodged, if the prosecution properly requests access to confidential attorney-client information related to the claim, the allegedly ineffective counsel has no grounds to object to the request.

¶36 The second sentence of subsection (1), which uses the word "may," doesn't alter our conclusion. As pertinent here, we understand that sentence as simply conveying that, since the waiver is automatically triggered by an ineffective

17

assistance claim, once such a claim is advanced, the allegedly ineffective counsel is no longer prohibited from discussing with, or disclosing to, the prosecution any confidential information related to that claim. In other words, "may" here is not used to grant discretion; it's used to remove a prohibition—as in, the allegedly ineffective counsel now "may" disclose something, whereas before counsel was prohibited from doing so.

¶37 Notably, construing subsection (1) as alternate defense counsel and the public defender urge would risk rendering it internally inconsistent. The first sentence would establish an automatic waiver, which would eliminate any basis for the allegedly ineffective counsel to refuse to provide the prosecution the attorney-client confidentialities related to the ineffective assistance claim advanced, while the second sentence would make such disclosures by the allegedly ineffective counsel wholly discretionary. That would be problematic because we're required to read all parts of a statute consistently, harmoniously, and sensibly. *See People v. Weeks*, 2021 CO 75, ¶ 26, 498 P.3d 142, 151.

¶38 Additionally, since section 18-1-417 cites no criteria or factors to guide the allegedly ineffective counsel's discretion, the interpretation proposed by alternate defense counsel and the public defender would permit the allegedly ineffective counsel to refuse to hold discussions with, or make disclosures to, the prosecution for any arbitrary reason. Nothing in the language used by the legislature supports

18

this radical construction of section 18-1-417, which would inevitably lead to absurd results. Of course, we're required to avoid a statutory interpretation that yields an absurd result. *Weeks,* ¶ 26, 498 P.3d at 152.

¶39 Moreover, were we to read subsection (1) as alternate defense counsel and the public defender seem to, it would likely lead to litigation. Upon a proper request from the prosecution for confidential attorney-client information, the allegedly ineffective counsel could simply decline to provide it without an explanation. The prosecution would then be forced to seek the court's intervention, and the court would be tasked with resolving the dispute. This is not what the legislature envisioned in promulgating section 18-1-417. *See* § 18-1-417(1) (indicating that the disclosures by the allegedly ineffective counsel are to be made "without the need for an order by the court that confidentiality has been waived"). Nor is it consistent with our decision in *Madera.* 112 P.3d at 693 ("With the guidance given in this opinion, we expect that the parties in this case and in similar future cases will be able to resolve their discovery disputes without court intervention.").

¶40 Alternate defense counsel and the public defender nevertheless point to subsection (2) in support of their position. *See* § 18-1-417(2) ("If the allegedly ineffective counsel or an expert witness has released his or her file or a portion thereof to defendant or defendant's current counsel, defendant or current counsel

19

shall permit the prosecution," upon request, to inspect and copy any materials related to the ineffective assistance claim). Subsection (2)'s use of the word "shall," they insist, stands in stark contrast to subsection (1)'s use of the word "may." Thus, posit alternate defense counsel and the public defender, the only time "shall" applies and any action is *required* is when the allegedly ineffective counsel or a retained expert witness has already released his or her case file (or a portion of it) to the defendant or current counsel. We remain unpersuaded.

¶41    Subsection (1) makes clear that an automatic waiver occurs as soon as an ineffective assistance claim is made. Therefore, upon the filing of an ineffective assistance claim, if the prosecution properly requests confidential attorney-client information related to the claim, the allegedly ineffective counsel has no basis to refuse the request. Subsection (2), in turn, addresses the situation in which, following the filing of an ineffective assistance claim, the allegedly ineffective counsel provides confidential attorney-client information to the defendant or the defendant's current counsel. If that occurs, then the defendant or current counsel "shall" share the confidential information related to the claim with the prosecution upon request.

¶42    That the legislature elected to use "may" in subsection (1), even though it used "shall" in subsection (2), doesn't mean that it intended to make the former discretionary. Rather, the legislature simply chose to frame the waiver in

20

subsection (1) as removing the prohibition on the allegedly ineffective counsel regarding the disclosure of attorney-client confidentialities. The legislature couldn't have framed subsection (2) similarly because neither the defendant (the holder of the attorney-client privilege) nor current counsel (who wasn't privy to the confidentialities in question) is bound by the prohibition.

¶43 We are not persuaded otherwise by Crim. P. 35(c)(3)(V). As we demonstrate next, alternate defense counsel's reliance on that part of Crim. P. 35 is misplaced.

## C. Crim. P. 35(c)(3)(V)

¶44 Alternate defense counsel contends that the allegedly ineffective counsel cannot provide the prosecution access to confidential attorney-client information until, pursuant to Crim. P. 35(c)(3)(V), the court decides to hold a hearing because it is only then that the scope of the subsection (1) waiver can be delineated. And, continues alternate defense counsel, subsection (2) is silent as to when the disclosures required by current counsel must be made, so that part of the statute, too, has to be read in conjunction with Crim. P. 35(c)(3)(V). Interpreting section 18-1-417 through the Crim. P. 35(c)(3)(V) prism, avers alternate defense counsel, reveals that the allegedly ineffective counsel and current counsel "need not and, in fact, cannot determine which documents, if any," relate to the ineffective assistance claim filed until the court, acting pursuant to Crim. P. 35(c)(3)(V), sets a hearing. We disagree.

21

¶45 Crim. P. 35, "Postconviction Remedies," permits a defendant "aggrieved and claiming either a right to be released or to have a judgment of conviction set aside . . . [to] file a motion . . . to vacate, set aside, or correct the sentence, or to make such order as necessary to correct a violation of his constitutional rights." Crim. P. 35(c)(3). Paragraph (c)(3) outlines the procedures that "apply to the filing and hearing of such motions." *Id.* As relevant here:

- The court "shall promptly review all motions that substantially comply with Form 4, Petition for Postconviction Relief Pursuant to Crim. P. 35(c)." Crim. P. 35(c)(3)(IV).

- If the motion, the file, and the record of the case show "that the defendant is not entitled to relief, the court shall enter written findings of fact and conclusions of law in denying the motion." *Id.*

- In the event the court doesn't deny the relief requested based on the motion, the file, and the record of the case, it must: (1) serve the motion on the prosecution if the prosecution hasn't yet been served the motion; and (2) serve the motion on the Office of the Public Defender if the defendant has requested counsel be appointed. Crim. P. 35(c)(3)(V).

- If the court serves the motion on the Office of the Public Defender, then, within forty-nine days of service, that office must: indicate whether it intends to enter on behalf of the defendant, identify whether it has any conflicts of interest in representing the defendant, state whether it needs additional time to investigate the defendant's claims, and add any claims it believes have arguable merit. *Id.*

- Upon receipt of the response from the Office of the Public Defender, or immediately if the defendant did not request counsel or if the defendant already has counsel, the court must order the prosecution, within thirty-five days, to either respond to the defendant's claims or request additional time to respond. *Id.* The court must also instruct

22

the defendant to reply to the prosecution's response within twenty-one days. *Id.*

- Thereafter, the court must "grant a prompt hearing on the motion unless, based on the pleadings, the court finds that it is appropriate to enter a ruling containing written findings of fact and conclusions of law." *Id.*

- If a hearing is held, the court must take whatever evidence is necessary. *Id.* Further, the court must enter written or oral findings granting or denying the relief requested within sixty-three days of the conclusion of the hearing or provide the parties notice of the date by which the ruling will be issued. *Id.*

¶46 Nowhere does Crim. P. 35(c)(3) discuss or even mention section 18-1-417. Nor does that part of the rule reference attorney-client confidentialities. Simply put, while Crim. P. 35(c)(3) establishes the procedures counsel and the court must follow vis-à-vis an ineffective assistance claim, it says nothing about the automatic waiver in subsection (1) or the required disclosures in subsection (2). To make the automatic waiver and required disclosures contingent on the court's decision to set a hearing under Crim. P. 35(c)(3)(V) would require us to add words to the statute. And "we do not add words to . . . a statute." *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶ 22, 465 P.3d 554, 560.

¶47 In any event, alternate defense counsel stands on shaky ground in maintaining that subsection (2) is silent on the timing of the required disclosures by current counsel. It isn't. Subsection (2) expressly states that current counsel

23

must make the required disclosures "upon request of the prosecution." § 18-1-417(2).

¶48 Given the clear language of section 18-1-417, to consult Crim. P. 35(c)(3)(V) in construing the statute would be to look for answers to questions that don't exist. Where, as here, the statutory language is unambiguous, we "give effect to its plain meaning and look no further." *Cowen*, ¶ 12, 431 P.3d at 218.

¶49 We recognize that, despite the waiver in subsection (1) being automatic and the required disclosures in subsection (2) being due upon request, prosecutors will generally wait to seek confidential attorney-client information until, pursuant to Crim. P. 35(c)(3)(V), the court has requested a response from them or subsequently set a hearing. In our view, this is the preferred practice. Given the importance of the protection afforded confidential attorney-client information, prosecutors would do well to avoid requesting access to such information until they have a need for it. After all, the court may end up denying the claim without requesting a response from the prosecution or, if the prosecution files a response, without holding a hearing.

¶50 The question still remains whether the prosecution may seek an order or use an SDT to attempt to obtain access to the confidential information covered by section 18-1-417. The prosecution and the district court both argue that the prosecution may do either or both. We disagree.

## D. Requests for Orders and Use of SDTs

¶51     Because the waiver in section 18-1-417 is automatic, it is improper for the prosecution to request an order or use an SDT to attempt to obtain from the allegedly ineffective counsel the confidential information subject to the statutory waiver. Relatedly, because the waiver is cabined by the nature of the ineffective assistance claim filed, it is improper for the prosecution to ever seek confidential information that's unrelated to the claim. Thus, whether through an order or an SDT, attempting to compel the production of the allegedly ineffective counsel's entire case file without regard to the nature of the ineffective assistance claim submitted runs afoul of Colorado law.

¶52     Here, after alternate defense counsel filed the Crim. P. 35(c) claim, the prosecution requested an order finding a waiver of the attorney-client privilege between Cortes-Gonzalez and the public defender. The prosecution then served an SDT on the public defender to compel the production of her case files. But there was no need for the court's intervention. Section 18-1-417(1) says as much. *See* § 18-1-417(1) (eliminating the "need for an order by the court that confidentiality has been waived" with respect to information related to the ineffective assistance of counsel claim advanced).

¶53     Because the filing of the ineffective assistance claim automatically waived Cortes-Gonzalez's attorney-client privilege with the public defender, the

25

prosecution was entitled to access any confidential information related to the claim. All the prosecution had to do was properly request that information from the public defender.

¶54 Moreover, the prosecution committed an additional error—it subpoenaed the public defender's case files *in their entirety*. The prosecution had no authority to request production of the entire case files. Inasmuch as the statutory waiver is limited to the confidential information related to the ineffective assistance claim lodged, the prosecution was entitled to access only that information.

¶55 The prosecution and the district court believed, however, that the SDT served on the public defender was necessary to allow the court to conduct an in camera review of the unredacted copies of the case files. As we discuss next, the prosecution and the district court incorrectly assumed that the prosecution is always entitled to have the court perform an in camera review of the allegedly ineffective counsel's case files.

## E. Requests for In Camera Review

¶56 We made clear in *Madera* that disclosure of a case file to the court for an in camera review "is still a form of disclosure." 112 P.3d at 691. We noted that, even when the court's in camera review results in no documents being released to the moving party, it could still have "a chilling effect on attorneys and their clients, especially if in camera review occurred frequently or was easily obtained." *Id.*

26

Emphasizing the importance of the attorney-client privilege, we cautioned that trial courts "should be reluctant to review the contents of an attorney's case file." *Id.* Furthermore, we said, separate and apart from the presumption in favor of the privilege, there are challenges that should dissuade trial courts from unnecessarily reviewing an attorney's case file. *Id.* at 690. Specifically, we mentioned the substantial burden such a review places on trial courts, not to mention the typical lack of guidance that makes an in camera review "tedious at best and probably unproductive as well." *Id.* at 691.

¶57 Our comments in *Madera* cannot be squared with the position taken below by the prosecution and the district court. Both the prosecution and the district court seemed concerned with the prospect of having to rely on the public defender to produce all of the confidential information in her case files related to the ineffective assistance claim advanced. Digging in its heels, the prosecution now argues that the public defender "is not an impartial party" and, therefore, the district court, not the public defender, must determine what is relevant to the ineffective assistance claim submitted. But nowhere in *Madera* did we carve out an exception based on the prosecution's mistrust of defense counsel. And such an exception is infeasible because it would swallow the rule. If the prosecution's mistrust of a defense attorney sufficed to warrant an in camera review, the prosecution could frequently and easily obtain in camera review of defense

27

counsel's case file. That would have an unacceptable chilling effect on attorneys and their clients. The prosecution must instead trust that the allegedly ineffective counsel will proceed in accordance with all ethical duties.

¶58 The district court and the prosecution maintain, however, that *Madera* allows an in camera review of the allegedly ineffective counsel's case file if the prosecution makes a particular showing. We agree. But we disagree that the district court here implicitly found that the prosecution made the requisite showing.

## F. *Madera*'s Required Showing

¶59 Drawing guidance from *Madera*, we conclude that, before undertaking an in camera review of the allegedly ineffective counsel's case file, the court must find that there is an adequate factual basis to support a good faith belief by a reasonable person that an in camera review of the materials may reveal that the attorney-client privilege does not protect all of the documents in the case file. *See Madera*, 112 P.3d at 690. Under *Madera*, the court is called upon to use a six-part analytical framework to ascertain whether the moving party has established the requisite factual basis. *Id.* at 691. The court should determine:

> (1) as precisely as possible, the information sought to be discovered,
> (2) whether the information is relevant to a matter at issue,
> (3) whether the information could be obtained by any other means,
> (4) whether the information is privileged,
> (5) if it is privileged, whether the privilege has been waived, [and]
> (6) if it is privileged, but has been waived, . . . the scope of the waiver.

28

*Id.*[3]

¶60    Recall, though, that we didn't consider section 18-1-417 in *Madera*. And this is the first time we analyze the interplay between the statute and the case.

¶61    We now hold that after the allegedly ineffective counsel has produced the confidential information covered by the automatic waiver in section 18-1-417(1), the court may grant a request for an in camera review of the allegedly ineffective counsel's entire case file if the prosecution clears the hurdle set forth in *Madera*. In the event the court finds that the prosecution has satisfied the *Madera* standard, it should order the allegedly ineffective counsel to produce the entire case file for an in camera review to determine whether there is additional information related to the ineffective assistance claim advanced. After any in camera review, the court must disclose to the prosecution claim-related information not previously produced.

¶62    Because the court here didn't apply the analytical framework in *Madera*, it failed to make the required determination. On remand, the court must apply *Madera* and make appropriate findings.

---

[3] Madera moved to withdraw his guilty plea under Crim. P. 32(d), not Crim. P. 35(c). *Madera*, 112 P.3d at 689. But we see no basis to decline to apply our analysis there to a Crim. P. 35(c) motion to withdraw.

## G. Instructions on Remand

¶63    On remand, the district court should return to the public defender the unredacted copies of her case files. Further, after the prosecution has reviewed the redacted copies of the public defender's case files already in its possession, if it has an adequate factual basis to support a good faith belief by a reasonable person that an in camera review of the unredacted copies of the case files may reveal that the attorney-client privilege does not protect all of the documents in those files, it may attempt to make the showing required by *Madera*. In the event the prosecution attempts to make such a showing, the court should follow the six-factor analytical framework outlined in *Madera*. If the court determines that the prosecution has satisfied the *Madera* standard, it should order the public defender to produce her entire case file for an in camera review. After any in camera review, the court must disclose to the prosecution claim-related information omitted from the redacted copies of the case files.

## V. Conclusion

¶64    We conclude that the district court erred in ordering the public defender to turn over the unredacted copies of her case files for an in camera review. Accordingly, we make the rule absolute and remand for further proceedings consistent with this opinion.