Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 21, 2022

## 2022 CO 34

**No. 22SA31, *In re Parental Resp. of E.K.*—Standing—Nonparents in Parental Role—Stepparents and Stepchildren.**

In this opinion, the supreme court reviews whether a district court misapplied the law governing nonparent standing under section 14-10-123(1)(c), C.R.S. (2021), by reading into the statute both an exclusivity and a parental consent requirement.

The supreme court now holds that neither exclusive physical care nor parental consent is required for a nonparent to establish standing under section 14-10-123(1)(c). Therefore, the district court erred by dismissing Stepfather's petition for an allocation of parental responsibilities concerning his stepdaughter, E.K., and the district court abused its discretion by awarding attorney fees against Stepfather pursuant to section 13-17-102, C.R.S. (2021).

Accordingly, we make absolute the rule to show cause and vacate the district court's order dismissing the petition and awarding attorney fees against Stepfather pursuant to section 13-17-102.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2022 CO 34

**Supreme Court Case No. 22SA31**
*Original Proceeding Pursuant to C.A.R. 21*
Arapahoe County District Court Case No. 21DR31126
Honorable Cynthia D. Mares, Judge

**In Re**

**In Re the Parental Responsibilities of**

**Child:**

E.K.,

**Petitioner:**

Steven Eugene Cook,

and

**Respondents:**

Holly Mercer Cook and Martin Andre Kristiseter.

**Rule Made Absolute**
*en banc*
June 21, 2022

**Attorneys for Petitioner:**
Griffiths Law PC
Christopher Griffiths
Kimberly Newton
Suzanne Griffiths

Eliza Steinberg
 *Lone Tree, Colorado*

**Attorneys for Respondent Holly Mercer Cook:**
Sherr Puttmann Akins Lamb PC
Tanya L. Akins
 *Greenwood Village, Colorado*

**Attorneys for Respondent Martin Andre Kristiseter:**
Walker Law Offices, LLC
Michelle L. Walker
 *Denver, Colorado*

**JUSTICE BERKENKOTTER** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART**, and **JUSTICE SAMOUR** joined.

JUSTICE BERKENKOTTER delivered the Opinion of the Court.

¶1 We accepted original jurisdiction, pursuant to C.A.R. 21, to consider whether the Arapahoe County District Court erred by dismissing a petition for allocation of parental responsibilities ("APR") filed by Steven Eugene Cook ("Stepfather") for lack of standing. We now reaffirm that neither exclusive physical care nor parental consent is required for a nonparent to establish standing to petition for an APR under section 14-10-123(1)(c), C.R.S. (2021), of Colorado's Uniform Dissolution of Marriage Act ("UDMA"). Thus, we make absolute the rule to show cause, vacate the district court's order dismissing Stepfather's APR petition and its award of attorney fees against Stepfather pursuant to section 13-17-102, C.R.S. (2021), and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶2 This case involves Stepfather's petition for an APR regarding his step-daughter, E.K. E.K. is the biological child of Holly Mercer Cook ("Mother") and Martin Andre Kristiseter ("Father") (collectively, "Respondents"). Respondents divorced in 2009 and currently share parenting time and joint decision-making responsibilities with respect to E.K. pursuant to their most recent parenting plan.

¶3 In 2013, Mother and Stepfather married and had two children together. Two years later, in 2015, Mother and Stepfather moved further away from Father, and

E.K.—who had been spending equal time with Mother and Father—began spending significantly more time living with Mother, Stepfather, and her half-siblings. During this time, Stepfather was actively involved in E.K.'s day-to-day life. He frequently took E.K. to and from school, helped her with homework, enrolled her in sports, attended her parent-teacher conferences, arranged for her to meet with academic tutors, paid for her daily expenses, and took her on various family vacations. Stepfather was also directly involved in discussions with Respondents concerning E.K.'s enrollment in private school and tuition payments.

¶4 This arrangement continued for approximately eight years, until early 2021, when Mother and Stepfather separated, and Mother moved out of the marital residence. E.K. continued to live with Stepfather, exclusively, for several months while finishing out the school year. In July 2021, shortly after Mother discovered that Stepfather had filed for divorce, Father removed E.K. from Stepfather's care.

¶5 That same month, Stepfather filed a petition for an APR with the district court, which he amended on August 8, 2021, in an attempt to establish his rights as a psychological parent to E.K. Respondents subsequently filed a joint motion to dismiss on September 24, 2021, arguing that Stepfather lacked standing because his relationship to E.K. was only incidental to his marriage to Mother and that he never acquired exclusive care over E.K. for the requisite period of time. The district court reserved ruling on the standing issue and set the matter for a hearing.

4

¶6 At the conclusion of the hearing, the district court determined that it could not "find that Stepfather had physical care of [E.K.,] as Mother made decisions for [E.K.] and provided for her daily care. Stepfather's role was that as supportive to Mother, not as a primary care provider." Thus, the district court declined to consider the eight years that E.K. spent living with both Mother and Stepfather in determining whether Stepfather had nonparent standing to petition for an APR under section 14-10-123(1)(c), because, as the district court put it, "[b]eing a supportive stepparent is not sufficient grounds to obtain standing to seek parental rights." The district court further found that "[a]lthough [E.K.] lived with Stepfather to complete her school year, she was in his care for less than 182 days." So, the district court dismissed Stepfather's APR petition for lack of standing and ordered Stepfather to pay Respondents' attorney fees pursuant to section 13-17-102 for his "continued pursuit" of a "frivolous" action.

¶7 Stepfather thereafter filed a C.A.R. 21 petition with this court seeking a rule to show cause, which we granted.[1]

---

[1] Stepfather presented three issues for our review:

1. Whether a stepparent who has maintained joint physical care of a child for over eight years has standing to petition for allocation of parental responsibilities under C.R.S. § 14-10-123(1)(c).

## II. Analysis

¶8     We begin by discussing our jurisdiction under C.A.R. 21(a)(1), along with the appropriate standard of review.  Next, we review the law governing a nonparent's standing to file a petition for an APR and the award of attorney fees, and, applying the applicable law to the facts of this case, we conclude that Stepfather has standing as a nonparent to file a petition for an APR under section 14-10-123(1)(c).  Therefore, the district court erred by dismissing his petition.  Finally, because Stepfather has standing, we also conclude that the district court erred by awarding Respondents attorney fees.  Because we conclude Stepfather has standing pursuant to section 14-10-123(1)(c), we now make the rule to show cause absolute, vacate the district court's order dismissing Stepfather's APR petition as well as its award of attorney fees under section 13-17-102 against Stepfather, and remand for further proceedings consistent with this opinion.  As a result, we need not reach Stepfather's remaining contention related to the exclusion of the parental responsibility evaluator's testimony.

---

2. Whether the district court erred by excluding testimony from the PRE appointed in a related proceeding when doing so significantly hampered a party's ability to prove standing under C.R.S. § 14-10-123(1)(c).

3. Whether the district court erred by ordering sanctions against stepfather under C.R.S. § 13-17-101 based on a misapplication of the law.

## A. Original Jurisdiction and Standard of Review

¶9 We have sole discretion to exercise our original jurisdiction under C.A.R. 21(a)(1). Because an original proceeding under Rule 21 "is an extraordinary remedy[, it] is limited both in its purpose and availability." *Rademacher v. Greschler*, 2020 CO 4, ¶ 20, 455 P.3d 769, 772. Relief under Rule 21 is generally appropriate when there would be no adequate remedy available on appeal, when a party may suffer irreparable harm absent relief under Rule 21, or when a case "raise[s] issues of significant public importance that we have not yet considered." *Id.* (quoting *Wesp v. Everson*, 33 P.3d 191, 194 (Colo. 2001)).

¶10 Stepfather argues that exercising our original jurisdiction is appropriate here because the appellate remedy would be inadequate given the immediate harm that will result to both Stepfather and E.K., a minor close to the age of majority. We agree. The length of the regular appeals process would likely cause Stepfather to suffer irreparable harm if E.K. reaches the age of majority before he is given the opportunity to establish his rights as a psychological parent. Accordingly, we conclude that our exercise of jurisdiction over this case pursuant to C.A.R. 21 is warranted.

¶11 We review the district court's interpretation of section 14-10-123(1) and its legal conclusions as to standing de novo. *In re B.B.O.*, 2012 CO 40, ¶ 6, 277 P.3d 818, 820; *In re D.T.*, 2012 COA 142, ¶ 6, 292 P.3d 1120, 1121. However, we employ

clear error review in considering a trial court's findings of jurisdictional fact. *Springer v. City & Cnty. of Denver*, 13 P.3d 794, 798 (Colo. 2000).

## B. Nonparent Standing Under Section 14-10-123(1)(c)

¶12 Stepfather first contends that the district court erred by dismissing his petition for an APR under section 14-10-123(1)(c) for lack of standing. We agree.

¶13 "Standing is a jurisdictional prerequisite that can be raised at any time during the proceedings," and once a court finds that it does not have standing, it must dismiss the case. *People v. Shank*, 2018 CO 51, ¶ 9, 420 P.3d 240, 243. Standing, in the context of the commencement, jurisdiction, and enforcement of APR proceedings, is governed by section 14-10-123 of Colorado's UDMA.

¶14 As outlined within subsection (1) of that statute, nonparents maintain standing to seek an APR under certain circumstances. Here, Stepfather filed the APR proceeding pursuant to section 14-10-123(1)(c) of the UDMA. Subsection (1)(c) permits the commencement of an APR petition "[b]y a person other than a parent who has had the physical care of a child for a period of one hundred eighty-two days or more, if such action is commenced within one hundred eighty-two days after the termination of such physical care." § 14-10-123(1)(c).

¶15 On its face, subsection (1)(c) permits *any* person, other than a parent, to petition for an APR so long as they meet the physical care and time requirements;

8

the subsection contains no other qualifying language. *See In re E.L.M.C.*, 100 P.3d 546, 553–55 (Colo. App. 2004) (concluding that the partner of a child's adoptive mother had standing to petition for an APR because the partner had acted as a coparent with the child's mother, both living with and supporting the child). It is this narrow focus on a nonparent's physical care of the child and the amount of time spent with or apart from that child that controls whether the nonparent has standing.

¶16 Despite this narrow focus, the district court, in finding that Stepfather did not meet the standing requirements as outlined in section 14-10-123(1)(c), read into that provision an exclusivity requirement and a consent requirement, both of which this court has rejected. *See, e.g., B.B.O.*, ¶ 20, 277 P.3d at 824. In the district court's view, Stepfather could not satisfy the physical care component of the statute because he was not E.K.'s primary care provider. This characterization, however, conflates "physical care" with "primary care" and misconstrues what "physical care" means under section 14-10-123(1)(c).

## 1. Section 14-10-123(1)(c) Does Not Require Exclusive Physical Care

¶17 Colorado courts have consistently interpreted the term "physical care" literally, meaning the "actual, physical possession" of a child as opposed to a legal term of art. *See In re Custody of C.C.R.S.*, 892 P.2d 246, 253 (Colo. 1995) (adopting

9

the literal definition of physical custody or care).[2]   This literal construction sufficiently takes into account "the amount of time a child has spent in the actual, physical possession of a non-parent," as well as "the psychological bonds non-parents develop with children" who have been in their care for a substantial amount of time.  *B.B.O.*, ¶ 11, 277 P.3d at 821 (quoting *C.C.R.S.*, 892 P.2d at 253). When determining whether a nonparent, who shares physical care of a child with a parent, has standing under section 14-10-123(1)(c), courts consider "the nature, frequency, and duration of the contacts" taking place between the child and nonparent and the child and the parent.  *D.T.*, ¶ 10, 292 P.3d at 1122.  Importantly, however, these contacts need not be exclusive.  *See E.L.M.C.*, 100 P.3d at 555 ("[S]ubsection (1)(c) applies even where the nonparent's physical care of the child is not exclusive of the parent's.").  This is in contrast with subsection (1)(b), which grants standing only if the child is not in the physical care of one of the child's parents.  *See* § 14-10-123(1)(b) (permitting the filing of a petition for an APR "[b]y a person other than a parent, . . . only if the child is not in the physical care of one of the child's parents").

---

[2] Prior constructions of this statute referred to physical custody rather than physical care.  *See* Ch. 310, sec. 3, § 14-10-123, 1998 Colo. Sess. Laws 1376, 1377. However, this court has continued to apply this definition to the term physical care.  *See, e.g., B.B.O.*, ¶ 11 n.2, 277 P.3d at 821 n.2.

## 2. Section 14-10-123(1)(c) Does Not Require Parental Consent

¶18 Also wrapped up in Respondents' contention and the district court's order is the notion that the child's parents must consent to the nonparent assuming or sharing responsibility over the child's physical care, an approach, as noted above, this court has expressly rejected. *See B.B.O.*, ¶ 20, 277 P.3d at 824.

¶19 In *B.B.O.*, this court held that a minor child's half-sister had standing as a nonparent under section 14-10-123(1)(b) to petition for an APR and that, despite the mother's contention to the contrary, the half-sister did not need to show parental consent to establish nonparent standing. *B.B.O.*, ¶ 19, 277 P.3d at 823. In that case, prior to her father's death, B.B.O. had been residing with her father and half-sister for approximately six years. *Id.* at ¶ 3, 277 P.3d at 819. B.B.O. continued to live with her half-sister, exclusively, for another two months before the half-sister petitioned for an APR. *Id.* at ¶ 4, 277 P.3d at 819. We concluded that the half-sister had standing to file a petition for an APR under subsection (1)(b), but we left the question of subsection (1)(c) standing for another day. *See id.* at ¶ 19 n.8, 277 P.3d at 823 n.8. We did, however, clarify as a general matter that a nonparent need not prove parental consent to have standing; rather, the nonparent standing analysis should focus on the time the nonparent and child spent together and the psychological bonds that may have formed during that time. *See id.* at ¶ 18, 277 P.3d at 823.

¶20    Moreover, this court has previously grappled with the question of whether we must read a parental consent requirement into section 14-10-123(1)(c) as a means of protecting fit parents' fundamental liberty interests in the care, custody, and control of their children. *See B.B.O.*, ¶ 17, 277 P.3d at 822–23 (citing *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion)). We determined that because our statute is constructed rather narrowly—significantly limiting the class of nonparents who may petition for an APR—and because the best interest of the child standard, *see* § 14-10-124, C.R.S. (2021), is codified separately from the standing provision in our statutes, *see* § 14-10-123, we need not apply the *Troxel* plurality's best interest of the child presumption to our nonparent *standing* analysis, *see B.B.O.*, ¶¶ 17–18, 277 P.3d at 822–23. The presumption under *Troxel*, and the question of whether Stepfather should be awarded any parental rights, is ultimately a question for the trial court on remand. *Cf. In re M.W.*, 2012 COA 162, ¶ 15, 292 P.3d 1158, 1161 (outlining a three-part test for trial courts to employ in nonparent APR proceedings in light of *Troxel*'s fit parent presumption).

¶21    With these principles in mind, we now apply the law to the facts of this case.

### III.  Application

¶22    As we have just explained, to meet the nonparent standing requirement under section 14-10-123(1)(c), Stepfather need only have shown that he had physical care of E.K. for a period of at least 182 days and that he filed the petition

within 182 days after Father removed E.K. from his care. We conclude that Stepfather meets that standard under the circumstances of this case because we may, and do, consider the time he co-parented with Mother in calculating the duration of his physical care. We also conclude that Stepfather need not have Respondents' parental consent during that timeframe to establish physical care for purposes of section 14-10-123(1)(c) standing.

¶23 Respondents argue that E.K. was in Stepfather's physical care only as a result of his marriage to Mother and that any care provided by Stepfather was at Mother's direction and under her supervision. Put differently, Respondents argue that Stepfather's role was more like that of a babysitter. In asserting this argument, Respondents cite to *In re L.F.*, 121 P.3d 267, 273 (Colo. App. 2005), for the proposition that the General Assembly did not intend for the term "physical care" to provide "temporary caregivers standing to seek [an APR] when their care is subject to the continuing direction and discretion of the child's parents." However, likening Stepfather's role in E.K.'s physical care to that of a temporary caregiver—like a babysitter—disregards the nature, frequency, and duration of contacts between E.K. and Stepfather. *See D.T.*, ¶ 10, 292 P.3d at 1122.

¶24 Likewise, the district court, in its finding that Stepfather was not the "primary caregiver" and, thus, was not providing the requisite physical care to E.K. mandated by the statute, also neglected to consider the "nature, frequency,

13

and duration" of Stepfather's contacts with E.K. *Id.* As such, the district court applied the wrong legal standard.

¶25 We conclude that, under the circumstances of this case, the physical care provided by Stepfather was akin to that provided by the partner of the child's adoptive mother in *E.L.M.C.*, in that Stepfather was acting more like a coparent with Mother than a temporary caregiver. 100 P.3d at 553–55. Stepfather lived in the same house with E.K. for eight years, aided in her education, was involved in her extracurricular activities, took her on family vacations, and paid for her day-to-day expenses.

¶26 While there was some disagreement at the standing hearing regarding the exact period of time that Stepfather had *exclusive* physical care of E.K., because the relevant standard does not require exclusive care, we need not resolve that dispute. Here, E.K. was in the physical care of Mother and Stepfather, together, between 2013 and 2021, and then exclusively in Stepfather's care from early 2021 until July 2021. This period more than satisfies the 182-day non-exclusive physical care requirement outlined in subsection (1)(c).

¶27 We also conclude that the district court applied the wrong legal standard by imputing the same consent requirement that this court previously rejected in *B.B.O. See B.B.O.*, ¶ 18, 277 P.3d at 823. Here, much like circumstances of the physical care of the child described in *B.B.O.*, E.K. had been residing with Mother

and Stepfather, together, since 2013 — nearly eight years — followed by a period of several months where Stepfather had exclusive physical care of E.K. It is irrelevant, notwithstanding Respondents' contention to the contrary, that Stepfather's physical care of E.K. — for the purpose of section 14-10-123(1)(c) standing — was not expressly consented to by Respondents. *See B.B.O.*, ¶ 20, 277 P.3d at 824; *E.L.M.C.*, 100 P.3d at 555. As we held in *B.B.O.* in the context of subsection (1)(b) standing, we hold here too that parental consent is not required to establish standing to petition for an APR under section 14-10-123(1)(c).

¶28 To characterize Stepfather's involvement in E.K.'s life as being merely incidental to his relationship with Mother, or to disregard the degree to which Stepfather contributed to E.K.'s physical care, would undermine the purpose of section 14-10-123(1)(c). Under these facts, we conclude that Stepfather plainly met the requirements as outlined in subsection (1)(c): He had physical care of E.K. for more than 182 days and he filed his petition for an APR within 182 days after the termination of such care. Thus, we conclude that Stepfather has standing to file a petition for an APR.

¶29 Accordingly, we conclude that the district court erred by applying the wrong legal standard and by dismissing Stepfather's petition for an APR based on a perceived lack of standing. We need not, and thus do not, reach the issue of whether the district court erred by excluding the parental responsibility

evaluator's testimony during the standing hearing, since the question of standing is now moot.

## IV. Attorney Fees Under Section 13-17-102

¶30 First, we review a trial court's decision to award attorney fees for an abuse of discretion, though we review the legal conclusions that predicate that decision de novo. *In re Marriage of de Koning*, 2016 CO 2, ¶ 17, 364 P.3d 494, 496 (quoting *In re Marriage of Gallegos & Baca-Gallegos*, 251 P.3d 1086, 1087 (Colo. App. 2010)).

¶31 We recognize that "[b]ecause dissolution proceedings under article 10, title 14 are civil, it is permissible for a district court to award attorney fees under . . . section 13-17-102." *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo. 1997). The district court may award attorney fees, in this context, only when it concludes that the action is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4) ("The court shall assess attorney fees if . . . it finds that an attorney or party brought or defended an action . . . that lacked substantial justification . . . .").

¶32 Because we conclude that Stepfather has standing to petition for an APR pursuant to section 14-10-123(1)(c), the district court abused its discretion by awarding attorney fees based on its conclusion that Stepfather's petition was substantially frivolous. Accordingly, we vacate the district court's award of attorney fees to Respondents.

16

## V. Conclusion

¶33    For the foregoing reasons, we now make the rule to show cause absolute, vacate the district court's order dismissing Stepfather's APR petition and its award of attorney fees against Stepfather pursuant to section 13-17-102, and remand for further proceedings consistent with this opinion.